FELIX DE PALMA ET ALS. *vs.* TOWN PLAN COMMISSION OF GREENWICH.

FELIX DE PALMA ET ALS. *vs.* THE TOWN OF GREENWICH ET ALS.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, Js.

Argued June 4th—decided July 22d, 1937.

*Raymond E. Baldwin*, for the appellants (plaintiffs).

*H. Allen Barton,* for the appellees (defendants).

HINMAN, J. On May 27th, 1936, the town plan commission of Greenwich amended the zoning ordinance of the town by designating as a zone for the municipal purpose of garbage and refuse incineration and the deposit of the residue therefrom an area of about fifteen acres composed of the Adsit tract of ten and one-half acres and the Tesei tract of four and one-half acres, being adjoining tracts situated in a district known as Chickahominy and located three or four hundred feet south of the Boston Post Road and about three-quarters of a mile from the New York State line. Numerous residents of the vicinity brought the above entitled actions, the two cases were tried together in the Superior Court and both appeals have been presented in this court upon a single finding which includes the following facts:

A zoning ordinance had been adopted by the zoning commission, predecessor of the town plan commission, in 1926, under which the Chickahominy district was placed in a Class C residence zone, except a strip along the Post Road zoned for business purposes. The Adsit tract was not residential property but was a nonconforming use, as it has been used by the town for over twenty years as a municipal dump for the disposal of garbage and other refuse collected in the entire town. The board of health, which had the power and duty of providing for the disposal of garbage, had long been considering the problem of garbage and refuse disposal and had made a thorough study both of methods used and of possibilities for the location of an incineration plant. In 1914 the town, on the recommendation of that board, purchased a tract of land in Chickahominy, a few hundred feet away from the Adsit property, as a site for an incineration plant. At that time the money

was not available for the cost of construction and the plant was not erected. This property is still owned by the town but is now too small for the purpose. In 1926 the Adsit property had been recommended by the board and submitted to the town, but the proposition to erect a plant on that site was rejected.

The board of health made a careful investigation of possible sites throughout the town between 1934 and 1936, giving special consideration to areas zoned for industrial use, but found the industrial zones unsuitable in regard to area and location and finally recommended the purchase of a tract about a mile north of the Post Road, known as the Jaeger tract, comprising about seventy acres located in undeveloped residential territory in a Class A residence zone. In 1935 the board secured an option to purchase this property and applied to the board of zoning appeals for a variance in the application of the zoning ordinance to permit the use of it for an incineration plant but the board of appeals rejected the application. Later the board submitted to the board of estimate and taxation a list of all vacant industrial property that could possibly be used and requested that board to make a choice, but the latter refused to recommend any of these sites and suggested one known as the Sperco site in Cos Cob. This site is in a Class B residence zone in the neighborhood of a large development of dwelling-houses. It is very limited in area and can be reached only by proceeding about a mile through a residential district. While the Sperco property was being considered, it was discovered that an act of the Legislature of 1931 had removed the question from the jurisdiction of the board of health and transferred it to the selectmen. The selectmen then undertook to locate a site, considered the various ones that had been suggested and came to the conclusion that the

Chickahominy site now involved was preferable to any of the others. Options to purchase the Adsit and Tesei sites were obtained and an application was made to the board of estimate and taxation to recommend to the town their purchase for a price of $26,500. The finance board approved that application and the acquisition of this property, made the recommendation to the town and a town meeting subsequently gave its approval to the proposal of the selectmen and appropriated the money for the purchase.

On or about May 7th, 1936, the selectmen presented to the town plan commission a petition for the amendment of the zoning ordinance so as to permit the use of the Adsit and Tesei tracts as a site for an incineration plant, setting forth the obtaining of the option and the appropriation, that the use of the Adsit tract as a municipal dump had been ordered terminated as to putrefactive waste by the board of health, that there existed an emergency and a public necessity to acquire land for the purpose of establishing an incineration plant, that the acquisition and use of these tracts for the purpose was approved by the selectmen, the board of estimate and taxation and by town meeting, and that the purposes of zoning could be best accomplished by amending the ordinance as requested. A public hearing was held by the commission on May 25th, 1936, at which the selectmen presented evidence in support of the petition and opponents of the proposed change were heard at length. The commission considered and it is a fact that the Chickahominy dump has been a nuisance to the public health of the town and to the comfort of residents in the neighborhood by reason of odors from garbage and other decayed matter, smoke from open fires of rubbish, and otherwise, and the board of health had on February 3d, 1936, adopted an ordinance declaring that dump a

nuisance detrimental to public health and prohibiting, after a specified date, the dumping of any garbage or other putrefactive matter thereon. The board of health considered that the best method for the disposal of municipal refuse is by incineration. The commission took the matter under advisement and after several meetings and careful consideration of the entire matter came to the unanimous conclusion that the facts stated in the petition of the selectmen were true and that the proposed amendment of the ordinance should be made. The amendment was thereupon unanimously adopted, together with a recommendation that the town boards and agencies do everything within reason in expenditures and maintenance to insure efficiency in operation of the plant and in general to advance any measure that is calculated to make the neighborhood increasingly attractive to its residents.

The commission considered, and it is found to be a fact, that the Adsit and Tesei tracts are peculiarly suitable for the purpose. They comprise a large area permitting the plant to be located at the remote end of the property where the nearest residence to the east is about five hundred and fifty feet away and the nearest house on Lyon Street is about seven hundred feet away. It is planned to locate the plant at a point behind the present face of the dump which is now forty feet high so that the upper twenty feet only of the building will be visible above the level of the ground, with the exception of the chimney. This part of the building can be readily screened by trees. The selectmen propose to fill, grade and landscape the property in accordance with a contour landscape survey made by a civil engineer. There are no dwelling-houses to the west and very few to the north. The property between the dump and the Post Road does not have substantial value as residential property and

is adapted for and will probably develop as commercial business property. The property adjoining the Post Road is now zoned for business purposes to a depth of from one hundred to two hundred feet. If the property is not used for the stated municipal purpose it will remain for years as a blighted area since its previous and present use have made it undesirable for residential purposes.

The finding, which is based not only upon a large amount of evidence but also upon inspection by the trial court of an incinerating plant in operation and the Chickahominy, Jaeger, and Sperco sites, sets forth voluminous details as to the construction and operation of refuse incinerators and experience with the operation thereof in other communities, and finds as a fact that "the experience of public health administrators and sanitation engineers is that properly designed and operated incineration plants do not create any nuisances either to health, comfort or property values." It also details the plant proposed to be erected, the manner of operation, and the methods by which the material is to be transported to the plant—in closed metal trucks—and finds that "the location and operation of the proposed plant on this site will not create a nuisance, nor will it be harmful to comfort or health;" the main portion of the plant will be practically invisible to residents in the district; such smoke as will be emitted from the chimney will create no nuisance, nor will the passing and repassing of the trucks; and that "the location of this plant on this site together with the landscaping and cleaning up and beautification of this now blighted area will increase property values in Chickahominy."

In its conclusions in the appeal from the town plan commission, the trial court notes that the statute (General Statutes, § 429) provides for appeals to the

courts only from boards of appeal, provided for by § 427, but, waiving the technical defect, as counsel seem to have done, considered the case on its merits, and in view of the large public interest and exigency involved we do likewise. The gist of the conclusions in that case is that "Greenwich is in dire and immediate need of an incinerating plant;" that "the proposed site is a proper one, and the erection and maintenance of the proposed plant will not be a nuisance;" that the amendment to the ordinance was adopted after due and careful consideration of the various sites, and with reasonable regard to the considerations prescribed and contemplated by the enabling statute (§ 424) and that it was not unjust, arbitrary, unreasonable or an abuse of discretion; and that the result of the changes contemplated in and in connection with the establishment of the incinerator will be an increase in the property values in the district. Facts included in the finding which are amply adequate to justify these conclusions have sufficient support in the evidence to withstand correction, and the appellants, at most, are not entitled to alterations which would avail to materially impair them, much less to substitute the findings sought, to the effect that the location and operation of the plant will create a nuisance, that the market value of plaintiffs' property will be depreciated, and that the act of the commission in amending the ordinance as it did was arbitrary, unreasonable, and discriminatory against the plaintiffs.

It is not and cannot be denied that there is emergent necessity for a garbage and refuse incineration plant in the town of Greenwich, nor can there be a tenable claim that suitable authorization of a site and use for that purpose is not within the proper province of the zoning authorities. The main controversy on this appeal, as it has been during all earlier stages, is as to

the most suitable location. The situation in this respect, as revealed by the record, is reflected in this excerpt from the finding: "The commission was familiar with the long history of the quest for a site and knew the advantages and disadvantages of the various sites. They knew that no matter where it was proposed to locate the plant, strenuous objections were made by people residing in the particular neighborhood suggested. This applied to the industrial sites since they were mere isolated spots surrounded by residential property. There had been a wide difference of opinion. These opinions were honestly and sincerely held though usually based upon selfish motives and ignorance of the true facts concerning incineration plants and their effect upon health, comfort and property value. This is the usual experience in all municipalities. The objections of the Chickahominy residents were to a great extent based upon a sense of injured prestige and alleged discrimination."

As to the action of the commission, the trial court was quite warranted in making this statement, first in the memorandum of decision and repeated in the conclusions from the finding: "If ever a board tried to act fairly and decently in the solution of a difficult problem, this one did. For many long years the duly constituted authorities in Greenwich have tried to find the best way out of an increasingly difficult and pressing emergency. The problem is so acute as to make it imperative that one be located somewhere— and soon. A favorable location was found, known as the Jaeger site. After careful consideration it was rejected [by the board of appeals]. Apparently every possible site has been carefully considered, and the proper authorities finally concluded this was the best one. In order to secure it, the proper board or commission changed it from 'C' residence zone to 'Indus-

trial,' and provided an exception, as it had power to do, permitting its use for a garbage incinerating plant. It is not the law that this court will substitute its discretion for that of the proper town authorities. It will merely decide whether they have acted arbitrarily, unreasonably, unlawfully. This court will not decide which of two possible sites is the better one." The record amply supports the determination, to which the function of the courts on appeal is limited, that the commission has not acted arbitrarily or illegally, or so unreasonably as to have abused its discretion. *Blake* v. *Board of Appeals,* 117 Conn. 527, 531, 169 Atl. 195; *St. Patrick's Church Corp.* v. *Daniels,* 113 Conn. 132, 135, 154 Atl. 343; *Piccolo* v. *West Haven,* 120 Conn. 449, 452, 181 Atl. 615.

As already stated, the evidence affords sufficient support for the findings that an incineration plant of modern design and sufficient capacity, properly constructed and operated, will not create a nuisance or be harmful to comfort or health. The possibility that this result might not be fully and constantly attained, through failure to create and maintain all of the conditions essential thereto, is insufficient to condemn or affect the proposition at this stage for any purposes involved in the present appeal. As the trial court suggests, if the fears of such failure expressed by the plaintiffs should in the future be realized in any material respect, equitable relief will remain available adequately to protect their interests.

As to effect upon property values in the vicinity of the area in question, the trial court's conclusion is: "The cleaning up of the present awful mess the land is now in, and the grading, landscaping, and planting of this blighted area, to all of which the town authorities have pledged themselves, will result in an increase in the value of all property in the Chickahominy dis-

trict. Even if the town fails in its pledge as to beauti-
fication, the mere removal of the serious nuisance
created by the present open dump fires will more than
offset the presence of the incinerator, and result in an
increase of values." This conclusion is decisive, ad-
versely, of the further claim that the amendment
works an unconstitutional taking of property of the
plaintiffs without due process of law and without com-
pensation.

The plaintiff contends that the existing conditions
surrounding and attending the dump are not to be
taken into account in determining the effect of the
establishment of the incinerating plant but that it
should be assumed, for that purpose, "that the plain-
tiffs are located in a Class C Residence zone without
any dump to depreciate their property." Even if this
criterion were assumed to be the correct one, the record
would not justify, much less compel, a finding of
effects which would transgress the Constitution in the
respects claimed. Resulting damage, if any, would be
but such, incidental to measures taken in the promo-
tion of the public welfare, as is not considered a taking
of property for which compensation must be made.
*State* v. *Hillman,* 110 Conn. 92, 104, 147 Atl. 294.
" 'Governments could hardly go on if to some extent
values incident to property could not be diminished
without paying for every such change in the general
law. As long recognized, some values are enjoyed
under an implied limitation and must yield to the po-
lice power.' " *Pennsylvania Coal Co.* v. *Mahon,* 260
U. S. 393, 413, 43 Sup. Ct. 158; *Opinion of the Justices,*
234 Mass. 597, 608, 127 N. E. 525. "Regulations may
result to some extent, practically in the taking of prop-
erty . . . and yet not be deemed confiscatory or un-
reasonable." *State* v. *Hillman,* supra, p. 105.

The conclusions as to nuisance which, as already

stated, the trial court justifiably reached are decisive, also, of the action seeking to restrain, by injunction, the use of the area in question as a site for the incineration plant.

There is no error.

In this opinion the other judges concurred.