## SOMMERS *v.* CITY OF DETROIT.

1. NUISANCES—INJUNCTION—LEGITIMATE BUSINESS.

A legitimate business should not be suppressed unless it appears that it will be of such a character as necessarily to produce a nuisance no matter how it is conducted.

2. SAME—LEGITIMATE BUSINESS—QUESTION OF FACT.

The question of whether a legitimate business becomes a nuisance in fact can only be determined after operation.

3. SAME—INCINERATORS—GARBAGE.

An incinerator for the disposal of offensive matters is not necessarily a nuisance and is not classed as a nuisance *per se* even though located near a private residence.

4. MUNICIPAL CORPORATIONS—USE OF STREETS IN COLLECTING GARBAGE.

The authoritative assumption by a municipality of the exclusive function of collecting garbage, refuse or debris accumulating in a city, in properly enclosed receptacles and carrying it through the city's streets is the exercise of the police power and is not the creation of a public or private nuisance of which property owners on thoroughfares so used to transport such matter can complain where it is conveyed in a careful and proper manner.

5. SAME — GARBAGE INCINERATOR PLANT — NUISANCE — FINDING OF COURT—EVIDENCE.

Finding of trial court that proposed incinerator for disposal of 450 tons of garbage daily was of modern design and ample capacity and that, if properly constructed, it will not create a nuisance or be detrimental to health, well-being or property values of residents of the vicinity of location now being used by city for garbage transfer depot and small incinerator plant, *held*, sustained by evidence.

6. COSTS—PUBLIC QUESTION—GARBAGE INCINERATOR PLANT.
    No costs are allowed upon dismissal of bill to enjoin erection
    of proposed garbage incinerator plant where taxpayers' bill
    is dismissed without prejudice as premature, a public question
    being presented.

Appeal from Wayne; Merriam (DeWitt H.), J. Submitted February 4, 1938. (Docket No. 143, Calendar No. 39,929.) Decided April 4, 1938.

Bill by William H. Sommers and others against City of Detroit, County of Wayne and others to restrain construction and operation of garbage disposal plant and incinerator. Glenn E. Pena and upwards of 1,000 other taxpayers intervened as party plaintiffs. Bill dismissed. Plaintiffs appeal. Affirmed.

*Bratton & Bratton,* for plaintiffs.

*Raymond J. Kelly,* Corporation Counsel, *John H. Witherspoon,* Assistant Corporation Counsel, *Duncan C. McCrea,* Prosecuting Attorney, *Garfield A. Nichols,* Assistant Prosecuting Attorney (*Oscar A. Kaufman,* of counsel), for defendants.

SHARPE, J. This is an action filed in behalf of property owners living in the vicinity of Davison avenue and the Detroit Terminal Railroad in the city of Detroit, in which they seek injunctive relief restraining the construction and operation of a 450-ton-daily garbage incinerator. The record shows that in 1922 the city of Detroit erected upon this property a garbage transfer depot. The garbage collected in northwest Detroit was conveyed in collection vehicles to this depot and there transferred to larger trucks and hauled outside of the city. At the time this transfer depot was located on this site,

there was but one house erected in the immediate vicinity. When the present plant was being constructed conditions had changed so that to the north of the plant there is located a foundry and a coal yard, and to the south and across Buena Vista avenue is a storage yard of the water board of the city of Detroit, while to the east and west are residential districts.

In 1925 a bill of complaint was filed by a group of residents living in the vicinity of the transfer depot alleging that this depot was a nuisance and asking for a permanent injunction restraining its operation. As a result of this bill of complaint an injunction was issued restraining certain practices of the employees, but no injunction was issued restraining the maintenance and operation of the garbage depot.

In 1926 the city of Detroit constructed a small incinerator on this site and the same has been used continuously since that time for the burning of rubbish. In 1935 a public works administration project was entered into by Wayne county for the construction of the incinerator and at the time of the filing of the present bill of complaint construction of the Davison avenue plant was begun and the sum of approximately $250,000 was spent for work done and contract commitments made.

The cause came on for trial and the trial court made the following finding of facts:

"1. Garbage has been hauled to this site for 15 years and in most instances several years before many of the homes in the vicinity were erected.

"2. The garbage collection area to be served by the incinerator is substantially the same as that served by the transfer depot.

"3. The incinerator will dispose of the garbage at the plant and it will be unnecessary to transport

it again through the streets, as is now done at the transfer depot.

"4. The proofs disclose that the city contemplates the enactment of an ordinance compelling the wrapping of garbage, which, if enacted and enforced, will materially minimize any objectionable odors from collection vehicles.

"5. There will be considerably more rubbish transported to the site with the new incinerator than at the present time as only a few loads of rubbish per day are disposed of now. The proofs show that the addition of rubbish and the mixing of the same with the loads of garbage will tend to minimize any objectionable odor emanating from the collection vehicle.

"6. Ashes will have to be hauled from the incinerator to a dump. The ashes left from the burning process will amount to but a small percentage of the volume of material burned, will be quenched and not objectionable if properly handled. * * *

"The plant is designed to include all of the facilities necessary to insure complete combustion of all of the material and to eliminate any possibility of smoke, odor or noxious gases. Provision is made for the proper handling of the material prior to and during its discharge into the furnaces and also the ash or residue remaining from the burning process. The plant is to be equipped with all of the mechanical features consistent with modern and sound engineering practice, such as an adequate ventilating system for the storage bins, the ash tunnel and, in fact, the entire building. Auxiliary fuel is provided for to insure complete combustion during wet seasons of the year. In fact it does not appear from the testimony that the design of the plant could be improved upon."

The trial court held that the plaintiffs could not be harmed by the construction of such a plant and dismissed the bill of complaint. Plaintiffs appeal

and contend that the building and operation of such a plant at the place above mentioned is a nuisance *per se;* that where a nuisance *per se* is so definitely self-evident, an injunction should issue; and that the conveyance of garbage and rubbish through the streets and the concentration of the same in amounts of 450 tons per day constitute a nuisance *per se.*

Plaintiffs rely upon *Barth* v. *Christian Psychopathic Hospital Ass'n,* 196 Mich. 642, where an injunction was granted to restrain the intended establishment of an insane hospital in a residential section of a city. We there said:

"It would be folly to say that they would not be entitled to any relief until the asylum has been established. It must be conceded that the establishment of such an institution in close proximity to the residences of the plaintiffs, which are in a residential section of the city, would destroy the comfort, the well-being, and the property rights of the plaintiffs."

During recent years we have had occasion to consider the subject of nuisances *per se.* The following cases were considered and declared not to be nuisances *per se:* a lumber yard and planing mill, *Mackenzie* v. *Frank M. Pauli Co.,* 207 Mich. 456 (6 A. L. R. 1305); a public dance hall, *People* v. *Schoonmaker,* 241 Mich. 177; a stable where horses are kept, *Shimberg* v. *Risdon Creamery Co.,* 215 Mich. 94; the business of selling and servicing automobiles, *Lansing* v. *Perry,* 216 Mich. 23; a gasoline filling station, *Sandenburgh* v. *Michigamme Oil Co.,* 249 Mich. 372; a dry cleaning plant, *Burdick* v. *Stebbins,* 250 Mich. 665; a small coal yard, *Daugherty* v. *Ward,* 240 Mich. 501; a commercial garage, *Moore* v. *Johnson,* 245 Mich. 173.

In the following cases injunctions were issued to abate a nuisance: the storage of 20,000 gallons of

gasoline in tanks in a strictly residential neighborhood, *Whittemore* v. *Baxter Laundry Co.,* 181 Mich. 564 (52 L. R. A. [N. S.] 930, Ann. Cas. 1916 C, 818); the establishment of an insane hospital in a residential neighborhood, *Barth* v. *Christian Psychopathic Hospital Ass'n, supra;* maintenance of an undertaking establishment and morgue in a residential section, *Saier* v. *Joy,* 198 Mich. 295 (L. R. A. 1918 A, 825); location of a pesthouse in a residential neighborhood, *Birchard* v. *Lansing Board of Health,* 204 Mich. 284 (4 A. L. R. 990); the operation of a tuberculosis hospital in a residential neighborhood, *Brink* v. *Shepard,* 215 Mich. 390 (18 A. L. R. 116).

The rule as to the abatement of nuisances is well stated in *Wolfschlager* v. *Applebaum,* 213 Mich. 180. In that case the court dismissed a bill of complaint brought to enjoin the erection of a two-story concrete building in a residential district to be used for the purpose of painting and upholstering of automobiles. We there said:

"The business is a legitimate one and should not be suppressed unless it appears that it will be of such a character as necessarily to produce the results apprehended. It can seldom be said that a particular business, lawful in its nature, will, no matter how conducted, constitute a nuisance. * * *

"The question of whether such business becomes a nuisance in fact can only be determined after operation."

See, also, *Mackenzie* v. *Frank M. Pauli Co., supra.* In 46 C. J. p. 709, § 187, it is said:

"A crematory or incinerator for the disposal of garbage, refuse and other offensive matters is not necessarily a nuisance, and it is not classed as a nuisance in and of itself or *per se,* even though located near a private residence."

In *Kirk* v. *McTyeire,* 209 Ala. 125 (95 South. 361), the court said:

"This appeal is from a decretal order denying, upon hearing, complainant-appellant's application for a temporary injunction to restrain, *pendente lite,* the city authorities of Bessemer from proceeding with their design to have constructed, on a lot provided by the city, an incinerator for the destruction of garbage, debris, the carcasses of animals, etc., accumulating in the city, and to forbid the removal of such matter to the place of contemplated incineration through or over a street of the city on which appellant, with many other citizens, maintains his family residence. * * *

"A suitably located and properly operated plant for burning garbage is not a nuisance. 29 Cyc. p. 1174. The authoritative assumption by the municipality of the exclusive function of collecting in wagons and carrying, in properly inclosed receptacles, through the city's streets to a common point, the garbage, refuse, or debris accumulating in the city, is the exercise of the police power, and is hence not the creation of a public or private nuisance of which property owners on thoroughfares so used to transport such matters can successfully complain. 2 Dillon Municipal Corporations (5th Ed.), § 678; 28 Cyc. pp. 715, 717, 719. * * *

"The mere apprehension that a nuisance will be created does not authorize the issuance of an injunction or its retention upon hearing to dissolve. *McHan* v. *McMurry,* 173 Ala. 182, 186 (55 South. 793)."

See, also, *Fisher* v. *American Reduction Co.,* 189 Pa. 419 (42 Atl. 36).

An interesting case upon this subject will be found in *De Palma* v. *Town Plan Commission of Greenwich,* 123 Conn. 257 (193 Atl. 868). The town of Greenwich, Connecticut, planned to locate an incinerator for the disposal of garbage and rubbish in

a class C residential section. The owners of property in that section brought suit for injunctive relief. The court there said:

"It is not and cannot be denied that there is emergent necessity for a garbage and refuse incineration plant in the town of Greenwich, nor can there be a tenable claim that suitable authorization of a site and use for that purpose is not within the proper province of the zoning authorities. The main controversy on this appeal, as it has been during all earlier stages, is as to the most suitable location. The situation in this respect, as revealed by the record, is reflected in this excerpt from the finding: 'The commission was familiar with the long history of the quest for a site and knew the advantages and disadvantages of the various sites. They knew that no matter where it was proposed to locate the plant, strenuous objections were made by people residing in the particular neighborhood suggested. This applied to the industrial sites since they were mere isolated spots surrounded by residential property. There had been a wide difference of opinion. These opinions were honestly and sincerely held though usually based upon selfish motives and ignorance of the true facts concerning incineration plants and their effect upon health, comfort and property value. This is the usual experience in all municipalities. The objections of the Chickahominy residents were to a great extent based upon a sense of injured prestige and alleged discrimination.' * * *

"As already stated, the evidence affords sufficient support for the findings that an incineration plant of modern design and sufficient capacity, properly constructed and operated, will not create a nuisance or be harmful to comfort or health. The possibility that this result might not be fully and constantly attained, through failure to create and maintain all of the conditions essential thereto, is insufficient to condemn or affect the proposition at this stage for

any purposes involved in the present appeal. As the trial court suggests, if the fears of such failure expressed by the plaintiffs should in the future be realized in any material respect, equitable relief will remain available adequately to protect their interests.''

We think it is well established that the destruction of garbage and rubbish by incineration is a modern and sanitary method of disposal of the same; that the collection of garbage is an important function of government in the protection of the health of its inhabitants; that in large cities the transportation of the same through the streets is the only presently known method; and that property owners on streets used for the transportation of refuse cannot complain where the material is conveyed in a careful and proper manner. See *Kirk* v. *McTyeire, supra.*

In our opinion the evidence supports the conclusion of the trial judge that the incinerator under construction is of modern design and ample capacity; that, if properly constructed, it will not create a nuisance or be detrimental to the health, well-being, or property values of the residents of the vicinity.

The bill was prematurely filed and will be dismissed without prejudice. No costs will be allowed as this is a public question.

WIEST, C. J., and BUTZEL, BUSHNELL, POTTER, CHANDLER, NORTH, and MCALLISTER, JJ., concurred.