NORTHWEST HOME OWNERS ASS'N *v.* CITY OF DETROIT.

1. JUDGMENT—RES JUDICATA—INJUNCTION—RUBBISH INCINERATORS
—CONSTRUCTION AND OPERATION OF GARBAGE INCINERATORS.
Court's decision not to enjoin construction of garbage in-
cinerator plant and discontinuance of suit to restrain opera-
tion of rubbish incinerator did not preclude court from
entertaining subsequent suit to enjoin operation of garbage
incinerator plant on the ground that former suits were *res
judicata* of matters involved in later suit.

2. APPEAL AND ERROR—CHANCERY CASES HEARD DE NOVO.
Chancery cases are heard *de novo* in the Supreme Court and it
has the duty therein to weigh all the evidence and reach a
conclusion in accordance with the just rights of the parties
after a review of the entire record.

3. SAME—CHANCERY CASES—REVERSAL OR MODIFICATION OF DECREE.
Since a trial court in a chancery case is in a much better posi-
tion to pass upon the credibility of witnesses than an
appellate court, by reason of the opportunity as well as
the advantage of seeing and hearing the witnesses during
the trial, and the appellate court is limited to a perusal of
the record, the appellate court should not reverse or modify
the decree of the trial court unless persuaded that it is not
in accordance with the just rights of the parties.

4. NUISANCE—CITY GARBAGE INCINERATOR—INJUNCTION.
In suit to enjoin operation of city garbage incinerator, evidence
*held,* to support findings of trial court that operation to date
constituted a nuisance requiring a permanent injunction re-
straining use for incineration of garbage until such time as
it may be operated without creating and disseminating foul
and noxious gases and odors over the residential district in
which it is located.

5. INJUNCTION—NUISANCE—CITY GARBAGE INCINERATOR—EVIDENCE—
JUDICIAL NOTICE—SCIENCE—CHEMICAL ENGINEERING.
The Supreme Court takes judicial notice of the fact that con-
tinuous research by men of science and advancement being
made in chemical engineering have brought about the solu-
tion of perplexing problems; hence will enjoin operation of

Liability for damages for a nontrespassory invasion of another's
interest in the private use and enjoyment of land, as distinguished
from remedy by way of injunction, see 4 Restatement, Torts, § 822
*et seq.*

city garbage incinerator in residential district only until means can be devised for operation without creating a nuisance.

6. NUISANCE—INJUNCTION—SCIENCE.

If grievances creating a nuisance can be removed by the aid of science and skill, a court of equity will go no further than to require those things to be done.

7. INJUNCTION—MODIFICATION OF DECREE—GARBAGE INCINERATOR—RUBBISH INCINERATOR.

In suit to enjoin operation of city garbage incinerator, where evidence fails to show that operation of nearby rubbish incinerator for disposition of combustible rubbish has constituted a nuisance or that use of the garbage incinerator for such purpose would do so, decree enjoining the operation of both incinerators for either purpose is modified so as to permit their use for the incineration of combustible rubbish.

8. MUNICIPAL CORPORATIONS—CITY GARBAGE INCINERATOR—GARBAGE TRANSFER STATION.

Where city property was used as a garbage transfer station for many years before erection of many of the residences in the nearby area and before capacious garbage incinerator was established thereon, the operation of which has constituted a nuisance, use thereof as a transfer station is again permitted if operation as such can be maintained without creating a nuisance requiring abatement.

9. NUISANCE—PRESCRIPTIVE RIGHTS.

The right to maintain a nuisance cannot be gained by prescription.

10. SAME—INJUNCTION—DAMAGES.

The owner of a residence is rightfully entitled to enjoin as a nuisance an annoyance which plainly interferes with ordinary comforts and enjoyment of his premises, no matter how slight the damage, provided the inconvenience is actual and not fanciful.

11. MUNICIPAL CORPORATIONS—CHARTERS—NUISANCE—INJUNCTION.

A municipal corporation is subject to injunction if it maintains a nuisance even in the performance of a charter obligation.

12. COSTS—INJUNCTION—MODIFICATION OF DECREE—GARBAGE INCINERATOR PLANT.

No costs are allowed upon modification of decree on appeal in suit to enjoin operation of city garbage incinerator plant.

Appeal from Wayne; Merriam (DeWitt H.), J. Submitted October 8, 1940. (Docket No. 1, Calendar No. 41,265.)   Decided September 2, 1941.

Bill by Northwest Home Owners Association, Inc., a Michigan corporation, and others against City of Detroit to enjoin the operation of an incinerator and garbage collection plant and for other relief. Decree for plaintiffs. Defendant appeals. Modified and affirmed.

*Beaumont, Smith & Harris* (*Percy J. Donovan,* of counsel), for plaintiffs.

*Paul E. Krause,* Corporation Counsel, *John H. Witherspoon,* Chief Assistant Corporation Counsel, and *Walter E. Vashak,* Assistant Corporation Counsel, for defendant.

CHANDLER, J.  The controversy involved in this case concerns the operation and maintenance of a garbage incinerator on West Davison avenue on outlot No. 1 between West Davison and Buena Vista avenues in the city of Detroit in what the trial court found to be a residential district or area.

The plaintiffs herein are the Northwest Home Owners, Inc., a Michigan corporation, and upwards of 200 individual residents and property owners in the vicinity of the incinerator in question.  The defendant is the city of Detroit, a municipal corporation.

The bill of complaint herein was filed by plaintiffs in the circuit court for the county of Wayne, in chancery, on September 27, 1939, and charges that defendant began the operation of said incinerator on or about March 1, 1938, and continued its operation uninterruptedly until October 1, 1938, at which time it suspended operations until about June 10,

1939, when it again commenced operating it and was continuing its operation at the time of the filing of the bill of complaint; and the record discloses that it was still in operation at the time of the hearing in April, 1940.

The operation of this incinerator consists of the incineration of certain portions of the garbage and refuse collected in the city of Detroit.

The bill of complaint charges that in the operation of said incinerator great numbers of trucks conveying garbage and rubbish thereto pass to the said plant through the streets in the vicinity thereof, and that said trucks while passing through said streets give off obnoxious and nauseating odors which are extremely offensive to the residents in the vicinity of said plant; that the hauling and presence of said garbage has caused the accumulation of vermin in and about said plant and about the streets adjacent thereto through which said garbage and rubbish is hauled, which is most offensive and injurious to the plaintiffs and other residents in said area.

Plaintiffs further charge in their bill of complaint that the defendant is operating, and has operated, said incinerator plant in such a manner that it gives off noxious gases, smoke and odors which can be smelled over an area at times extending to a mile each way from said plant, and that the combustion of garbage therein causes heavy and vile-smelling smoke that distributes itself over a wide area surrounding said plant, all of which is extremely offensive and injurious to the plaintiffs; that the presence of said offensive, obnoxious and nauseating odors from said plant affects the ability of the property owners in the vicinity thereof, particularly these plaintiffs, to rent premises owned by them at reasonable and fair prices, and prevents the disposal and

makes difficult the sale of property in said district at fair prices.

The bill of complaint herein shows that certain of these plaintiffs, prior to the institution of the instant cause, and before the construction of the present incinerator, instituted suit to restrain the construction of the said incinerator and garbage plant, in which it was charged that in the operation of said plant a nuisance would be committed; that that after a hearing of said cause in the circuit court, the bill of complaint was dismissed, and on appeal to this court the decree of the lower court was affirmed. (*Sommers* v. *City of Detroit*, 284 Mich. 67.)

It appears from the record, and is charged in the bill of complaint in the instant case, that the substance of the finding of the lower court upon the hearing of the prior suit was that the construction of such an incinerator plant was not a nuisance *per se*, and that this court in affirming the decree of the lower court held that the bill of complaint in said cause was prematurely filed.

Plaintiffs further charge that the operation of said incinerator is a nuisance, is continuing and is recurrent, and that it will not be abated by defendant unless an order or decree is entered preventing the operation of said plant; that the injuries caused by said alleged nuisance are immediate and direct, and affect directly the said plaintiffs, and each of them, and others in the same district or area, in their persons and in the comfort they would otherwise enjoy in their homes and residences in said territory and in their property interests; that such nuisance is directly causing personal discomfort to each and all of said plaintiffs, and that the injuries suffered thereby are common to all of the plaintiffs and to the residents in said territory, and to that part of

the public which passes through the streets in said district. The bill further charges that the operation of said incinerator and garbage collection plant has caused and will cause irreparable damage to these plaintiffs and others in whose behalf this suit is instituted.

The relief sought by said bill of complaint is an injunction enjoining and restraining defendant from operating said incinerator and garbage collection plant, and from the handling, disposal, and treatment, in any manner, of garbage and rubbish from the area surrounding said plant for treatment or disposal elsewhere in such manner as to give off foul and offensive odors and stenches.

The answer of the defendant avers that the plant in question as designed and constructed is equipped with all the mechanical features consistent with modern, sound engineering practice, with the necessary facilities to insure complete combustion of the material and to eliminate smoke, odor or obnoxious gases; that it is of modern design and ample capacity, and if properly operated will not create a nuisance or be detrimental to health, well-being or property of the residents who live in that vicinity.

Defendant further avers that the plant in question is located in an industrial area; that the site upon which the plant is located was purchased by the city of Detroit in 1920, and that in 1922 the defendant constructed thereon a depot for the transferring of garbage, which garbage transfer depot was in continuous use by the city up until the operation of the incinerator here involved; that in 1925 the city constructed an incinerator plant on said property in connection with the garbage transfer depot, and that said garbage depot and incinerator plant were located on the site in question and used as such for several years before the plaintiffs ac-

quired their property and constructed buildings now occupied by them in the vicinity of said plant.

(It might be well to say here that the record undisputably disclosed that the incinerator plant that was used prior to the present plant was never used for incineration of garbage but merely for the incineration of combustible rubbish.)

Defendant further avers that the plant now in operation is properly operated in a sanitary manner; that it is clean and gives off no odors or gases which are injurious to the residents and users of buildings and premises in the vicinity of said plant, and that the construction of the present incinerator in the place of the garbage transfer depot theretofore maintained has greatly improved the conditions upon and surrounding the site in question, and denies that any noxious gases or odors emanate from the plant by reason of its operation which cause injury to the plaintiffs or other residents in the vicinity of said plant.

As a further ground of defense the defendant avers that the question of the right to use the site in question as a garbage and rubbish station, the use of the streets leading thereto for the purpose of hauling garbage and rubbish, and the operation of an incinerator plant as being a nuisance has been previously adjudicated in the circuit court for the county of Wayne, in chancery, in a cause entitled *"The New Northwest Detroit Improvement Association* v. *City of Detroit,* in Chancery, No. 128614''* and in the case of *Sommers* v. *City of Detroit, supra,* and that such determinations in said circuit court case and the Supreme Court case above referred to are *res judicata* of the questions involved herein.

The incinerator plant involved in this litigation was constructed at a cost of upwards of $380,000 and was undoubtedly designed and intended to put

to an end effectually a situation concerning garbage disposal at this location, which has been a source of trouble between the residents of that neighborhood and defendant for many years. Exclusive of the instant suit, there have been four law suits between residents and property owners, adjacent to the location of the present incinerator, and defendant, three of which have reached this court, only one of which, *Sommers* v. *City of Detroit, supra,* do we deem it necessary to advert to in the discussion of the questions involved in this appeal.

The relief sought in the *Sommers Case* was identical with the relief here prayed for with this exception; in the former case an injunction was sought restraining the construction of the incinerator in question. In the instant case an injunction is sought restraining the operation of the plant after completion. Both cases were tried before the same circuit judge, Hon. DeWitt H. Merriam, of the Wayne circuit.

In the *Sommers Case* the bill of complaint was dismissed by the trial court, and on appeal to this court the decree was affirmed. A review of the opinion of this court in *Sommers* v. *City of Detroit, supra,* 69, 70, shows that the trial court upon the hearing of that case made the following findings of fact:

"1. Garbage has been hauled to this site for 15 years and in most instances several years before many of the homes in the vicinity were erected.

"2. The garbage collection area to be served by the incinerator is substantially the same as that served by the transfer depot.

"3. The incinerator will dispose of the garbage at the plant and it will be unnecessary to transport it again through the streets, as is now done at the transfer depot.

"4. The proofs disclose that the city contemplates the enactment of an ordinance compelling the wrapping of garbage, which, if enacted and enforced, will materially minimize any objectionable odors from collection vehicles. [The record in the instant case shows that defendant did on March 2, 1938, enact an ordinance compelling the wrapping of garbage, which became effective May 2, 1938.]

"5. There will be considerably more rubbish transported to the site with the new incinerator than at the present time as only a few loads of rubbish per day are disposed of now. The proofs show that the addition of rubbish and the mixing of the same with the loads of garbage will tend to minimize any objectionable odor emanating from the collection vehicle.

"6. Ashes will have to be hauled from the incinerator to a dump. The ashes left from the burning process will amount to but a small percentage of the volume of material burned, will be quenched and not objectionable if properly handled. * * *

"The plant is designed to include all of the facilities necessary to insure complete combustion of all of the material and to eliminate any possibility of smoke, odor or noxious gases. Provision is made for the proper handling of the material prior to and during its discharge into the furnaces and also the ash or residue remaining from the burning process. The plant is to be equipped with all of the mechanical features consistent with modern and sound engineering practice, such as an adequate ventilating system for the storage bins, the ash tunnel and, in fact, the entire building. Auxiliary fuel is provided for to insure complete combustion during the wet seasons of the year. In fact it does not appear from the testimony that the design of the plant could be improved upon."

This court said (pp. 70, 71):

"The trial court held that the plaintiffs could not be harmed by the construction of such a plant and

dismissed the bill of complaint. Plaintiffs appeal and contend that the building and operation of such a plant at the place above mentioned is a nuisance *per se;* that where a nuisance *per se* is so definitely self-evident, an injunction should issue; and that the conveyance of garbage and rubbish through the streets and the concentration of the same in amounts of 450 tons per day constitute a nuisance *per se.*"

There then follows a full and thorough discussion of the cases relied upon by plaintiffs as well as those cited and discussed by defendant. We respectfully invite attention to what we there said in the *Sommers Case* and the authorities quoted from and cited therein, because of the similarity of the questions involved there and in the instant case.

We quote the conclusions we arrived at in the *Sommers Case,* page 75:

"We think it is well established that the destruction of garbage and rubbish by incineration is a modern and sanitary method of disposal of the same; that the collection of garbage is an important function of government in the protection of the health of its inhabitants; that in large cities the transportation of the same through the streets is the only presently known method; and that property owners on streets used for the transportation of refuse cannot complain where the material is conveyed in a careful and proper manner. See *Kirk v. McTyeire,* 209 Ala. 125 (95 South. 361)..

"In our opinion the evidence supports the conclusions of the trial judge that the incinerator under construction is of modern design and ample capacity; that, if properly constructed, it will not create a nuisance or be detrimental to the health, wellbeing, or property values of the residents of the vicinity.

"The bill was prematurely filed and will be dismissed without prejudice."

As we view it, there is no question but that both the trial court, and this court on appeal, in the *Sommers Case,* determined the following issues: that incineration is a modern method of garbage disposal; that garbage collection is an important function of government; that street transportation of garbage is the only known method; that property owners cannot complain when transportation is done in a proper manner; that the incinerator then under construction was of modern design and ample capacity and if properly constructed and operated, would not create a nuisance. However, both the trial court and this court definitely determined that an incinerator under construction was being dealt with and not an incinerator in operation, and this court determined that the bill of complaint had been prematurely filed, and the dismissal of said bill was without prejudice, and, in effect, this court adopted the assertion made by the Supreme Court of Connecticut in the case of *DePalma* v. *Town Plan Commission of Greenwich,* 123 Conn. 257, 266 (193 Atl. 868): "If the fears of such failure expressed by the plaintiffs should in the future be realized in any material respect, equitable relief will remain available adequately to protect their interests."

The Wayne circuit court case, in chancery, No. 128614, hereinbefore referred to, was instituted by the New Northwest Detroit Improvement Association and others against the city of Detroit on November 24, 1925, by the filing of a bill of complaint containing allegations similar to those in the instant suit and seeking similar relief. The material difference being that in that case an injunction was sought restraining the operation of a rubbish incinerator; in the instant case the injunction sought is to restrain the operation of the garbage incinerator. In all other respects the charges made and the relief prayed for might be termed identical.

In the chancery case, referred to as 128614, the calendar entries show the filing of the bill of complaint, as aforesaid; order to show cause signed and filed on the day of the filing of the bill of complaint; that on November 28th the order to show cause was discontinued; December 29th, answer of defendant filed; March 2 and 3, 1926, "hearing in progress;" on March 4th, "Ordered that temporary injunction issue. Cause heard and submitted;" March 19th "Order for issuance for interlocutory injunction signed, filed, entered;" June 25, 1928, "cause discontinued."

The calendar entry of March 4th showing "cause heard and submitted" was evidently an error because on March 4, 1926, the following order was entered by Judge Jayne before whom the hearing was in progress:

"The above-entitled cause having been partly heard and continued for further proof, it nevertheless appears to the court at this time, after hearing the testimony of various witnesses, that adequate proof sustains and requires the exercise of the discretionary power of the court to grant the plaintiffs an interlocutory injunction restraining certain acts set forth in the bill of complaint, pending the final determination of the cause; on motion of Carey, Armstrong & Weadock, attorneys for the plaintiffs,

"It is hereby ordered that an injunction issue out of and under the seal of this court, directed to the servants, agents, and employees of the city of Detroit whose duties or employment in any way concern the operation of the garbage transfer station situated on the northeast corner of Buena Vista avenue and the Detroit Terminal Railroad in the city of Detroit, Wayne county, Michigan, while said employees are going to, while there, and while going from said transfer station, that they, the said employees, do absolutely desist, refrain from, and stop

swearing and using any vile or profane language, from shouting and all other forms of boisterous conduct, from racing the motors of any automobile, from opening the cut-out on any automobile, and from driving any automobile to or from said premises at an excessive rate of speed," and the cause was discontinued before the entry of any final decree or order, in fact before the submission of the case to the court on the proofs taken.

It cannot be said that the proceedings above referred to, namely, the Wayne county case in chancery, No. 128614, and that of *Sommers* v. *City of Detroit, supra,* are *res judicata* of the relief sought in the instant suit, particularly that portion seeking to restrain the operation of the garbage incinerator, and in view of the conclusions we arrive at from a review of the entire record, further discussion of the question of *res judicata* becomes wholly unnecessary.

Upon the hearing of this case, a large number of witnesses were sworn and a vast amount of testimony was taken, making a record, including the pleadings and exhibits, of well over 1,000 pages; 39 witnesses were sworn for the plaintiffs and 94 for the defendant. The testimony of these numerous witnesses was highly conflicting. If we were to adopt the testimony of the witnesses for the plaintiffs as to the conditions that are created by the operation of this garbage incinerator, we would be compelled to hold that the operation thereof is such a public nuisance as to require the immediate cessation of all further operations of the incinerator and any future attempts on the part of the defendant to improve the existing conditions, which might eventually abate entirely the alleged nuisance, being the dissemination of foul and noxious gases and odors over the area adjacent to said incinerator, and per-

manently enjoin the use thereof for any purpose connected with the concentration, destruction or transfer of garbage or combustible rubbish. To adopt the testimony of defendant's witnesses would be to permit the continuation of the operation of this incinerator as now operated notwithstanding the annoyance, inconvenience and damage to plaintiffs and others similarly situated by the dissemination of such foul and noxious gases and odors as found by the trial judge to exist, because said witnesses for the defense seemed to be in accord that such annoying conditions as plaintiffs complain of do not exist and that no nuisance is created by the operation of the incinerator in question.

The trial judge who had the benefit of seeing and hearing the witnesses made certain findings of fact and entered a decree in accordance therewith. His findings relative to the construction and operation of the garbage incinerator follow:

"This unit was completed and put in operation February 28, 1938. Its regular capacity was 450 tons per day. It also had a large excess capacity. Following the opening and operation of this unit, and continuing in fact down to and including the time of the trial of this case, there have been numerous and continuous complaints from residents of the neighborhood and the area surrounding this incinerator from distances as close as from a few blocks to three-quarters of a mile and upwards. For the city and the various officials having to do directly or indirectly with the operation of this incinerator, it must be said that they have done what they could under the circumstances. The evidence shows that every sort of regulation and supervision has been attempted. These attempts to regulate have included the supervision of registered civil engineers and a specially trained operating crew, although the city

had been advised by the experts who testified in the *Sommers Case* that specially trained or skilled personnel would not be required. All of these attempts to regulate have, however, not met with success. The court is unable to find that regulation is adequate to remedy the conditions complained of and existing, save possibly to reduce somewhat various objectionable noises which attended the earlier stages of the operation of the incinerator. The testimony shows that neither the design nor the equipment of the plant, nor the subsequent regulative efforts, have produced the operative results hoped for and promised by the experts aforesaid. The court concludes from the testimony that further regulative effort and experimentation will not alter the conditions complained of.

"In addition to the use of skilled and trained personnel, and even the active supervision of city engineers, the ground around the incinerator lot has been sodded, landscaping has been done, an additional pavement over that originally contemplated has been put in place. The use of different devices to minimize noise and steam, and the employment of different methods of applying chemical deodorants or sprayers—all these have not reached or remedied the trouble, or the real nuisance, which is the concentration of three to six hundred tons of garbage daily in this neighborhood, and the burning of such garbage, attended by vile, filthy and nauseating odors, which at recurring intervals blanket successive portions of this residential area—depending on the ever-changing atmospheric conditions and the direction of the winds, the latter of which things obviously cannot become the subject of regulation or control. Odors come both from the raw garbage and from the stacks. * * *

"Before actual operation we had such appealing assurances from the witnesses (in *Sommers v. City of Detroit,* 284 Mich. 67) that we were at that time

impelled to believe and to find that the plant was designed to include all of the facilities necessary to insure complete combustion and to eliminate, as the experts said, any possibility of smoke, odor or noxious gases. The plant was to be equipped with all of the mechanical features consistent with modern and sound engineering practice. In fact, as was said in *Sommers* v. *City of Detroit, supra,* 70, it did not appear from the testimony that the design of the plant could be improved upon. This was said before the actual effects of the operation of the plant could be known. Since that time we have had approximately two years' operation of the incinerator unit in question here. * * * The evidence is ample on the operative effects of this plant and the attempts made by various departments to improve and remedy them. They were hopeful and praiseworthy but unfruitful in doing away with the nuisance.

"At the trial of the *Sommers Case,* several expert witnesses were produced by the defendant municipal corporation who testified in somewhat convincing fashion that by reason of the modern design and equipment of the incinerator, its operation would result in no nuisance. This was before operation. The testimony in the case at bar has convinced me, and I find, that the subsequent completion of the incinerator in question and its actual operation have not borne out the optimistic and hopeful statements made by these experts and that the operation of the incinerator is a nuisance. One cannot escape the conclusion from the testimony adduced that the location of an incinerator in the area in question has been proved to have been an ill-advised undertaking. * * *

"I find that area to be essentially a residential area and not as defendants attempted to show, an industrial area. The fact that a narrow strip of unrestricted or partially unrestricted lots, some 250 feet in width, runs through this district and adjoins

the Detroit Terminal Railroad where the latter passes through this portion of the city, is not controlling. As a matter of fact, few commercial buildings of any size are found on this strip for a considerable distance. For example, between Schoolcraft on the north and Fullerton on the south, they occupy a relatively small portion of the area of this unrestricted strip. The court is not concerned with those south in the neighborhood of Grand River as changing the essentially residential character referred to. The court had laid before it the detailed restrictions of the lots in the several subdivisions on either side of the Detroit Terminal Railroad. Aerial photographs received in evidence also assisted in picturing the character of the district.

"Aside from this, most of the defendant's witnesses considered, and I think rightly so, that they lived in a residential neighborhood, and so stated on the witness stand. One after another of them stated they experienced no discomfort or annoyance whatever from the several concerns named so frequently by the defendant throughout the case. If these defendant witnesses were to be believed on this point it would be difficult indeed to find that any of the plaintiffs moved into any nuisance from any of them.

"Nor was the defendant's testimony free from other matters which necessarily attracted the attention of the court. Many of them disclaimed noticing smoke from the incinerator stacks. Others admitted only what they called a white haze. But city witness Gibbons, a city smoke inspector, not only observed but tabulated and recorded smoke during his surveys or tests, and it includes dense brown and even black smoke, which he says can be seen for two miles. In any event, gases, whether accompanied or not by smoke, are emitted from the stacks and spread foul and nauseating odors about the district, causing material annoyance and discomfort. A very

large number of witnesses on both sides were viewed by the court on the stand, and their appearance, demeanor and character observed, with a view to determining where the truth lay on disputed questions of fact in their testimony. The trial was lengthy. I am satisfied that the complaint of the plaintiffs is real and substantial and not captious or imaginary, and that the residents of this area have been deprived of the full and normal enjoyment of their property by the presence of the garbage incinerator in question; that they have been subjected to material annoyance and discomfort, and that the enjoyment of their property has been materially interfered with. Their complaints were justified. With this view, responsible city officials, including the department of public works commissioner, in office when the incinerator started operating, and the city engineer—both of whom had duties bringing them into direct contact with the operating period of this northwest incinerator, seem to have agreed. City officials closed this plant after about four months of operation for a period of approximately five months.

"Independently of other objectionable features or effects, the record, in my opinion, shows that the gases emitted from this incinerator have an adverse and injurious effect on health.

"From another point of view, as on a balancing of the conveniences as between the parties, of issuing or not issuing an injunction for abatement, I am of the opinion that an injunction should issue. That the abatement of the nuisance may involve the changing of the structure so that it may be put to other uses is not controlling. * * *

"Viewing the testimony before the court in this case in still another aspect, it seems to the court that any other views or conclusions than the foregoing would amount to an attempt to uphold, by judicial action, a taking of the property of citizens

of the city for public purposes without compensation. Such a result, prohibited by both the State and the Federal Constitutions, would be an anomaly.

"On the part of the defendant it was urged that because between 1922 and 1923 there was established on a portion of the outlot which now contains the incinerator a garbage transfer operation that people who moved into the neighborhood thereafter were not in position to complain of the incinerator established in 1938. In the first place, not all of the plaintiffs located in the area in question prior to the establishment of this old transfer station. Others testified that they moved into the area subsequent to the time of the establishment of this station but that the area of effect or extent of the odors from the garbage transfer station was somewhat localized to the immediate residences, whereas the odors and gases from the incinerator emanating from the stacks spread over and affected a much wider territory. It is to be noted also that the old transfer station operation did not involve the burning of garbage. The erection and operation of the incinerator created a new and a different kind of a nuisance. In 1922, this part of the city had not been built up to any great extent and in fact was partially settled. With the passage of years it gradually became the kind of a district that is clearly reflected in this case by the testimony and by the numerous photographs received in evidence. It is reasonable to suppose also that some of the plaintiffs, especially in view of the decision in the *Sommers Case,* believed that effective relief would be available in equity if operations of the incinerator did not turn out as hoped for. The advent of the incinerator affected a large number of persons in the area who were not mindful of the previous garbage transfer station operations.

"The complaining citizens in this case were involved in somewhat of a dilemma. I have elsewhere referred to the record of complainants and litigation

attending the garbage operations in the district in question.  In the *Sommers Case,* which was the last litigated case prior to the case at bar, the defendant there urged that the plaintiffs had sued too soon and that they should have awaited the advent of the actual operations of the incinerator.  On the other hand, it is urged that they are guilty of laches.  The defendant also urged that by following statutory and charter provisions, the city could establish and maintain a private nuisance of which no person affected could complain by application for injunctive relief.  With these contentions we are unable to agree.

"In order to erect a plant for the incineration of garbage it is true it was necessary to comply with the statutory and charter requirements but this does not mean that a plant so constructed rendered the municipality immune from the maintenance and continuance of a private nuisance.

"I am of the opinion that the further concentration of garbage by the city of Detroit or any of its departments in this neighborhood and any further use of the structure known as the northwest garbage incinerator for the incineration of garbage and/or rubbish should cease within 30 days.  The court is not justified, with the testimony in this case, in subjecting the residents of this area to further periods of experimentation.  The city departments proceeded with knowledge and notice that adequate equitable relief was available if the operations of this northwest incinerator unit were not as hoped for.  They proceeded with full knowledge of the risk involved and of the possibility of the elimination of the site in question as a location for one of its incinerator units.  The evidence in the record does not impress the court that any great difficulty or loss will be encountered by the city in providing some other means of disposal for part of its garbage than the use of this particular northwestern incinerator unit."

The decree entered by the trial court pursuant to its findings decreed that the defendant within 30 days of the date of its decree "shall cease and desist and is hereby enjoined and restrained from any further use of the structure known as the northwest garbage incinerator unit for the burning of garbage or rubbish or any combination thereof * * * that within the time aforesaid said defendant cease and desist and is hereby enjoined and restrained from the concentration or deposit for transfer purposes or otherwise of garbage collections on the premises aforesaid or in the neighborhood or vicinity of said premises."

It is from this decree that defendant appeals.

We hear chancery cases *de novo* and it is therefore our duty to weigh all the evidence, and to reach a conclusion in accordance with the just rights of the parties after a review of the entire record. *Peta* v. *Gaines*, 286 Mich. 450; *Hawthorne* v. *Dunn*, 210 Mich. 176. With this rule in mind, we have carefully reviewed the evidence and exhibits in the instant case as well as the opinion of the court and the able and exhaustive briefs filed by counsel for the respective parties.

Of the plaintiffs' witnesses we find that approximately 27 of them live in what we term close proximity to the incinerator in question, and that only about 8 or 10 of defendant's witnesses live within an equally near distance. Many of defendant's witnesses, and some of plaintiffs', live as far as a mile and a mile and a half from the source of this trouble. It can be quite readily understood why the former discovered no foul and noxious odors, and we are forced to the conclusion that the annoyances and inconveniences of the latter are, to say the least, largely imaginary. However, we find that more of plaintiffs' witnesses than defendant's were in a lo-

cation that would enable them to give reliable testimony relative to the odors and gases emanating from this incinerator and the inconveniences and the annoyances caused by ashes and smoke coming therefrom while in operation.

We are appreciative of the fact that the trial court is in a much better position to pass upon the credibility of the witnesses than is the appellate court, by reason of the opportunity as well as the advantage of seeing and hearing the witnesses during their examination, direct and cross. The appellate court is limited to a perusal of the record. We should not, therefore, reverse or modify the decree entered herein unless we are persuaded that it is not in accordance with the just rights of the parties. *Langdell* v. *Langdell,* 285 Mich. 268; *Moore* v. *Moore,* 231 Mich. 209.

We are in accord with the findings of the trial court, which is supported by competent evidence that the operation of this incinerator for the burning of garbage during the entire period of its use for such purpose constituted and is a real nuisance, and should be abated by a permanent injunction restraining its use for the incineration of garbage until such time, if ever, as it may be operated without creating and disseminating foul and noxious gases and odors over the residential district in which it is located.

We are therefore of the opinion that the decree in this case should be so framed as to be subject to modification permitting the use of this incinerator for the purpose for which it was designed and constructed, in case means can be devised by which it may be operated without the dissemination of foul and noxious gases and odors over the district in which it is located or any of the residential portion thereof.

The trial judge was of the opinion that all known means had been employed by defendant to prevent the nuisance complained of and that further efforts in that direction will prove futile.

We are not inclined to disagree with the trial judge that all present means known to defendant and its engineers have been employed to obviate the existing conditions resulting from the city's operation of this incinerator, and but for the fact that scientific methods have been, and are being, daily discovered and devised to solve similar problems, we would not hesitate to affirm a decree permanently enjoining the use of this plant for the incineration of garbage. However, we take judicial notice of the fact that continuous research by men of science and the almost miraculous advancement being made in chemical engineering have brought about a solution of problems which we believe as perplexing as the ones involved in the instant case.

"If the grievances can be removed by the aid of science and skill, a court of equity will go no further than to require those things to be done." See *Mackenzie* v. *Frank M. Pauli Co.*, 207 Mich. 456, 468 (6 A. L. R. 1305).

On the location, and near the garbage incinerator, is situate a rubbish incinerator which was constructed by defendant in 1925 and which was continuously in use for the incineration of combustible rubbish until at least the time of the commencement of the use of the garbage incinerator in 1938. We find no competent evidence to the effect that the rubbish incinerator for the burning of combustible rubbish has constituted or will constitute a nuisance, nor that the use of the garbage incinerator for that purpose would constitute a nuisance. We find, therefore, no justification for the entry of a decree re-

straining the use of the rubbish incinerator or the garbage incinerator for the incineration of combustible rubbish.

It appears from the record that at a place on or near the location of the garbage incinerator, defendant, since 1922, has maintained a dock or platform called a garbage transfer station or depot, which was used for the concentration of garbage, in the transfer of the garbage collected by small trucks to street cars and large trucks for transportation to a distant location for final disposition. The use of this platform or dock as a transfer station was continuous from 1922 until the construction of the garbage incinerator. However, in 1928 it was inclosed. In the earlier period this garbage was collected in its raw state in open trucks, but since May, 1938, the wrapping of garbage has been required by ordinance of the city of Detroit, which ordinance the record shows has been enforced, and the trucks after being loaded are covered with tarpaulin, both of which eliminated many objectionable features.

The incinerator in question is a large, tight, well-constructed structure of steel, cement and brick containing bins for the deposit of garbage and we find nothing in the record that would warrant restraint of the use of this building as a transfer station or depot if defendant should see fit to use it for that purpose. It certainly would be far less objectionable than the former method of transportation and concentration of garbage in vogue by the city of Detroit for nearly 20 years prior to the construction of this structure. We cannot therefore agree with the trial court that the use of this building for that purpose should be enjoined. However, we do not wish to be understood as holding that, if

objectionable methods obtain in the use of this structure for the purposes aforesaid to the extent of creating or maintaining a nuisance, its use for that purpose cannot be abated. Neither do we wish to be understood as holding that the right to maintain a nuisance can be gained by prescription.

We conclude upon the record that the decree of the trial court herein should be modified by limiting the injunction to the restraint of the use of the incinerator for the burning of garbage until such time as it can be done without dissemination of noxious gases and odors over the residential area surrounding said plant.

Appellant insists on this appeal that plaintiffs cannot maintain a bill of complaint for equitable relief because they have an adequate remedy at law. We have reviewed defendant's argument and the cases cited in support thereof on this branch of the case, and arrive at the conclusion that such contention, as applied to the facts of this case, is without merit.

We recognize the difficulty of defining a rule to direct definitely when the remedy must be sought in law actions and when in equity suits, where the rule that should be followed necessarily rests almost entirely upon the peculiar facts present in each particular case.

We quote the following pertinent description or definition from 46 C. J. p. 677:

"The question in all cases is whether the annoyance produced is such as materially to interfere with the ordinary comfort of human existence. It is not of course necessary that the annoyance and discomfort should be so great as actually to drive the person complaining thereof from his dwelling, but if the alleged injury be a plain interference with

ordinary comforts and enjoyment, there is a nuisance, no matter how slight the damage, provided the inconvenience be actual and not fanciful.''

The trial court found, and we have determined, that the operation of the garbage incinerator, as now conducted by defendant, is a nuisance and to be ''a plain interference with the comfort and enjoyment'' of the plaintiffs in their property; that such inconvenience is actual and not fanciful; and that it should be abated.

This court recognizes that the maintenance by a municipality, even in the performance of a charter obligation, of that which is a nuisance, is subject to injunction is seen by reference to *Birchard* v. *Lansing Board of Health*, 204 Mich. 284, and authorities there cited. See, also, *Sommers* v. *City of Detroit*, *supra*.

A modified decree in accordance with this opinion may be entered.

The trial court awarded no costs and we think, under the circumstances herein, no costs should be awarded by this court.

SHARPE, C. J., and BUSHNELL, BOYLES, NORTH, WIEST, and BUTZEL, JJ., concurred. McALLISTER, J., took no part in this decision.