PETER HENKEL v. CITY OF DETROIT, HENRY P. BRIDGE, COMPTROLLER, AND RICHARD POOLE, MARKET CLERK.

*Municipal corporation — Public markets—Obstruction of streets and sidewalks—Damnum absque injuria—Market fees.*

A city has a right to establish and maintain a public market on premises duly condemned for that purpose, even though it be an incidental consequence that market wagons from which sales are made collect in the neighborhood and to some extent cause the obstruction of the streets. And no private right of action arises against the city for such obstruction especially where it is under police regulation ; and it is proper, for paying the expense of such regulation, to collect fees from those who sell goods from such wagons.

No private right of action can arise from an act of legislation or from a failure in duties of a political nature, such as the enforcement of police regulations. Nor can municipal discretion be reviewed by the courts when the right to exercise it is conferred by valid legislation.

Where property is condemned for public purposes it will be presumed, in collateral proceedings, that persons affected thereby have been properly compensated in damages, if found entitled thereto.

City streets are not exclusively for the passage of persons and vehicles, but for all the other purposes to which it is customary to devote them.

Every one in locating his business or his residence is presumed to do so in view of the probability that his interests may be affected by the results which are incidental to the gathering of people in the same locality for residence and traffic.

Appeals from the Superior Court of Detroit. Submitted October 4. Decided October 18.

INJUNCTION BILL. Both parties appeal. Reversed; bill dismissed.

*John H. Bissell* and *Samuel T. Douglass* for complainant. A merchant can pursue his individual remedy for injury from a public nuisance, such as the obstruction of the street so as to prevent access to his place of business: Dill. Mun. Corp. § 730; *Fritz v. Hobson* L. R. 14 Ch. Div. 550; *Eliz. & L. R. R. v. Combs* 10 Bush 382; and if the municipal government authorizes such obstruction by ordinance permitting the use of the street as a public market, it is liable, even though the ordinance is invalid: 2 Dill. Mun. Corp. 968, 766; *Stanley v. Davenport* 54 Ia. 469; *Milhau v. Sharp* 27 N. Y. 611; it is also liable as a proprietor of the market: Cooley on Torts 619, 620; Dill. Mun. Corp. 985 (780); 1 Potter on Corporations §§ 386, 387; as it becomes proprietor by condemnation of the premises: *Oliver v. Worcester* 102 Mass. 499; and where the nuisance is of long existence, and likely to be a continuing one, and the damages occasioned by it difficult of estimation, and a very imperfect reparation, the party complaining is entitled to invoke the jurisdiction of equity to restrain the defendants from all acts tending to produce it: 2 Story's Eq. Jur. §§ 925, 925 a, 925 f, 926, 926 a; *Cooper v. Alden* 1 Harr. Ch. 72; *Middleton v. Booming Co.* 27 Mich. 535; 2 Comp. Laws § 6377 p. 1797; *Whipple v. Farrar* 3 Mich. 436–46; *Miller v. Stepper* 32 Mich. 195; *Carroll v. Rice* Walk. Ch. 373; *Robinson v. Baugh* 31 Mich. 291; protection against a public nuisance, by injunction, at the suit of a person specially injured by it, is one of the established heads of equitable jurisdiction: Adams' Eq. (207), (211); 2 Story's Eq. Jur. §§ 923, 924; *Hamilton v. Whit-*

*ridge* 11 Md. 128 ; *Corning v. Lowerre* 6 Johns. Ch. 439 ; *Cooper v. Alden* Har. Ch. 72 ; *Ryan v. Brown* 18 Mich. 196 ; *Upjohn v. Richland Tp.* 46 Mich. 542 ; the person or corporation responsible for the creation or maintenance of a public nuisance is liable in damages to the person specially injured by it : *Philadelphia v. Collins* 68 Pa. St. 106 ; *Stetson v. Faxon* 19 Pick. 149 ; *G. R. & I. R. R. Co. v. Heisel* 47 Mich. 393 : 38 Mich. 62 ; the blockade of the public street by teams and vehicles, engaged in a business otherwise lawful, is such a nuisance : *People v. Cunningham* 1 Denio 524 ; equity has concurrent jurisdiction of many classes of cases where equitable as well as legal relief is needed : *Shepard v. Sanford*, 3 Barb. Ch. 127 ; *Bassett v. Salisbury Co.* 43 N. H. 249 ; there is no difference in principle in granting both kinds of relief in a case of nuisance, and in any other case of tort, where both are appropriate to the nature of the injury : 2 Story's Eq. Jur. § 796 ; *Gardner v. Newburgh* 2 Johns. Ch. 162 ; *Woodcock v. Bennet* 1 Cowen 711 ; *Edwards v. Allouez Co.* 38 Mich. 46.

City Counselor *Henry M. Duffield* for defendant. An injunction will not lie against a nuisance from which complainant suffers no special damage that others do not experience : *Miller v. Grandy* 13 Mich. 540 ; *Osborne v. Brooklyn R. R. Co.* 5 Blatch. 366 ; *Schurmeier v. St. Paul & Pacific R. R.* 8 Minn. 114 ; *Lansing v. Smith* 8 Cow. 146 ; *Davis v. Mayor etc.* 14 N. Y. 506 ; *Stetson v. Faxon* 19 Pick. 149 ; *Coast Line R. R. Co. v. Cohen* 50 Ga. 451 ; a market house, if a nuisance, is a public one, and a court of equity is not for the correction of public abuses : *Higgins v. Princeton* 8 N. J. Eq. 309 ; the collecting of teams, blocking up the way during market hours, is not an obstruction in the legal sense : *Bush v. Seabury* 8 Johns. 418 ; municipalities authorized to establish market places may prohibit selling by retail meats, etc., except at the public markets : Dill. Mun. Corp. § 386 ; and may use the public streets for certain hours for market purposes : *Nightingale Case* 11 Pick. 168 ; municipal officers are in no such sense municipal agents that their misconduct or negli-

gence is chargeable against the municipality: *Detroit v. Blackeby* 21 Mich. 84; no action lies against municipalities for the exercise of legislative authority: *Larkin v. Saginaw* 11 Mich. 88; *Pontiac v. Carter* 32 Mich. 164; and if the market ordinances and regulations do not authorize the injury complained of, and it occurs only because they are not enforced by the police or other municipal authorities, the city is not liable in damages: Dill. Mun. Corp. §§ 975–8.

COOLEY, J. The object of the bill in this case is to obtain a perpetual injunction against the use by the city of Detroit of Michigan Grand avenue for market purposes to the prejudice of complainant.

Michigan Grand avenue extends from Campus Martius to Randolph street, and is two hundred feet in width. Fifty feet in width through the middle, from end to end, was duly taken and condemned by the city for market purposes several years ago, and is now occupied as a public market, with buildings and sheds. This appropriation left seventy-five feet in width for a public street on each side. Bates street intersects Michigan Grand avenue between Randolph street and Campus Martius. Complainant is owner of a lot one hundred and thirty feet in width on Randolph street, facing the easterly end of Michigan Grand avenue, and of another lot fifty feet in width on the northerly side of the Grand avenue. The Randolph street lot is occupied by six four-story brick stores, in two of which complainant carries on business as wholesale grocer, and the other four he has been accustomed to rent. The other lot is covered by a building in which complainant carries on the business of pork packing.

The city hall formerly occupied the westerly end of the present market grounds, but has now been removed. Before its removal the common council passed an ordinance whereby it was declared that the "square of ground lying between the east end of the city hall and the east line of Randolph street" should be "a public market, to be known as the city hall market." Another ordinance provided that

"all persons selling or offering for sale, from wagons, carts, or other vehicles, any vegetables, fish, poultry, butter or fruits, in the vicinity of the city hall market, shall occupy and stand with their teams on that portion of Michigan Grand avenue embraced between the east line of the city hall and the east line of Randolph street."

Changes were made in these ordinances and additional regulations established, but it will be sufficient for the purpose of this suit to give the regulations as they existed at the time the suit was instituted. Previous to that time the easterly boundary of the market had been changed from the east to the west line of Randolph street, so as to exclude that street. The following are city ordinances:

"All persons selling or offering for sale from wagons, carts or other vehicles, within the limits of the city of Detroit, any vegetables, fish, poultry, produce, meat or articles of any kind, shall occupy and stand with such wagons, carts or other vehicles which they may use in exposing such articles as aforesaid for sale, in the following places, as directed by the clerk of the market, subject to regulation by the common council by resolution, and in no other place or places, to wit:

"All that space known as the central market grounds, and lying between the Campus Martius and Randolph street, and on such portions of the eastern and western district hay market grounds (so called) as may be laid out and designated for such purpose by the Board of Public Works, under the direction of the common council.

"In addition to the duties already prescribed, the market clerk shall collect a fee of ten cents from every owner, driver or other person in charge of any team or vehicle standing upon or occupying for market purposes the public market grounds of the city, or any of the streets or public squares adjacent thereto. For every fee so collected the said clerk shall deliver to the person from whom he collected the same a ticket receipt furnished such clerk by the controller, as hereinafter mentioned.

"All wagons, carts and other vehicles shall occupy such positions on the market grounds and streets adjacent thereto as the clerk of the market shall direct.

"There shall be collected from every owner, driver or other person in charge of any wagon, cart or other vehicle using the market grounds or public squares or streets adja-

cent thereto, for market purposes, a rent or fee of ten cents, and for every live calf offered for sale a fee of ten cents, and for every live sheep or lamb a fee of five cents.

"The clerk of the market shall have charge of the markets, take care of the buildings thereof, attend therein daily during market hours, keep the same in a clean and orderly condition, collect all rents of stalls and stands, and such fees from wagons and other vehicles, also for calves, sheep and lambs, as may be fixed by the common council; see that market wagons and other vehicles occupy such positions so as not to interfere with public travel, as may be prescribed by the common council; carefully observe that the rules and regulations of the market are properly observed and respected, and make complaint of any infractions of such rules and regulations or of any ordinances of the city."

It is alleged in the bill of complaint that the use of Michigan Grand avenue and Randolph streets for market purposes began in 1865, and has been increasing from that time to the present; that during the last four or five years, on the principal market days, and during the market hours from six o'clock in the morning until ten or eleven o'clock these streets in the vicinity of complainant's premises have been so much obstructed by market wagons and vehicles stationed upon them by the market clerk as to exclude all other traffic upon and use of said streets, and as to render the complainant's places of business inaccessible by the complainant's own vehicles or those of his customers. This obstruction of the streets in front of and adjacent to the complainant's premises is averred to be a great injury to his business, and it is alleged that it not only greatly impairs the rental value and prevents him from obtaining suitable tenants, but damages the fee in the land and causes irreparable injury. Complainant insists that it is the duty of the city to so regulate the use of the public streets as to prevent all unlawful or improper obstructions to the use thereof for the purposes to which they were dedicated, but that he has appealed to the proper authorities to do so and redress his grievance in vain. He denies the power of the city to appropriate any portion of the public streets to market purposes, and insists that all ordinances and regulations of the city purporting to

authorize it are so far null and void. And the bill prays "That the said city of Detroit, its controller, market clerk, and other officers, agents, or servants, may be perpetually enjoined by the decree of this court from placing or stationing the wagons or other vehicles of market gardeners, farmers, hucksters, or other persons resorting to the city hall or central market, in or upon any part of Randolph street, Michigan Grand avenue, or any other public street or space adjacent to said central or city hall market, and from collecting market fees of any kind from the owner of any such vehicles as may be upon any of such streets and outside said market grounds.

"That the damage to the plaintiff's business and property may be ascertained by proceedings in this cause for that purpose, and that a decree may be rendered in favor of the plaintiff against the defendant, the city of Detroit, for the amount thereof, with costs."

Answer was filed on behalf of the city and its officers, in which it is averred that the city ordinances do not and were not intended to give to any person whomsoever any right, privilege or license to occupy any portion of the public highways of the city as a market ground, or for any purpose beyond that reasonable use of the public highways to which all persons are entitled. It is further answered that "the city of Detroit does not claim the power or right to use the public streets of the city as market grounds, and does not claim or exercise the right to maintain a public corporate market on any portion of Michigan Grand avenue or of the streets adjacent thereto."

The defendants "show that the central market grounds, through the center of Michigan Grand avenue, have been used for market purposes, and a public market has been maintained thereon, by the city of Detroit under a claim of right since the year 1834; that the complainant purchased his said property and started his said business thereon, well knowing the existence of said public market and of the intent of the city to continue its existence on said strip of fifty feet in width through the center of Michigan Grand avenue; that the streets adjacent to said market are not used by the city or by the public except in such reasonable manner as is necessarily incident to the business carried on at said

market; that the property of the complainant is not injured, or its enjoyment by the owner or his tenants interfered with, by these defendants, and the complainant suffers no inconvenience or damage not common to the neighborhood or locality; that the existence of said market has been and still is of great profit and advantage to the complainant, and has greatly increased the value of his property beyond what it would have become worth if no market had been maintained there by the city."

The case went to a hearing on pleadings and proofs, and the court made a decree of which the following are the material portions:

1. It satisfactorily appears from the proofs, that the defendant, the city of Detroit, has by various ordinances, resolutions and regulations, adopted by its common council, claimed and exercised the right to use for market purposes the public streets adjacent to the city hall or central market grounds, as in the plaintiff's bill defined, and under color of its authority, the defendant, Richard Poole, the clerk of said market, and his predecessors in office, have been in the constant practice of stationing during market hours the wagons and other vehicles of market gardeners, hucksters, and others having articles for sale about the market, upon such portions of said adjacent streets, namely, Michigan Grand avenue, Randolph, Congress, and Bates streets, as he saw fit, to the extent oftentimes of blockading portions of these streets and rendering them impassable by other vehicles,—which has amounted to a misuse and obstruction of those streets as public highways since the year 1865; and by means of such misuse of the streets named, the defendant, the city of Detroit, has, since April 15, 1875, received profits in the way of fees collected from farmers, market gardeners, and other persons stationed or allowed to stand with their teams and wagons on said public streets, using them for market purposes as aforesaid; and that such misuse of the streets named was in violation of, and an interference with, the rights of the plaintiff in the enjoyment of his property described in the bill of complaint, as well as an interference with the use of the same streets by the public.

2. The court further declares that the use of the streets named for market purposes as above and in the plaintiff's bill stated, was without warrant of law.

3. The court doth therefore order, adjudge and decree, that all ordinances, and parts of ordinances, declaring the extent of the central or city hall market, authorizing the stationing of teams in the streets adjacent to said market, and the collection of market fees from persons occupying such streets for market purposes, except so far as the same relate to the public market maintained on the portions of Michigan Grand avenue lawfully condemned and vacated for a public market, namely ; a strip fifty feet wide in the middle of said street, extending from the easterly line of the Campus Martius to the west line of Bates street, and the same width from the east line of Bates street to the west line of Randolph street, are null and void ; and all resolutions and regulations adopted by the said common council under said ordinances—except as above excepted—are without warrant of law and void.

4. And the defendant, the city of Detroit, its controller, market clerk, and all others, its officers, servants and agents, are forever enjoined and restrained from placing or stationing the wagons or other vehicles of market gardeners, farmers, hucksters, or other persons resorting to the city hall or central market in or upon any part of Randolph street, Michigan Grand avenue, or any other public street or space adjacent to said market, and from collecting market fees of any kind from the owner or person in charge of any such vehicles as may be upon any of such streets and outside said market grounds, as above and by law defined.

5. It is further decreed that the prayer of the plaintiff for the allowance of damages sustained by him in his business and property be and the same is hereby denied.

6. It is ordered that the plaintiff recover of the defendant, the city of Detroit, his costs, to be taxed."

It is not necessary to recapitulate the evidence in the case, or to enlarge upon the facts. The city did not dispute that its legislation had the effect to collect the market wagons from the country in the immediate vicinity of complainant's premises on Michigan Grand avenue and Randolph street to an extent that must at times seriously impede the public travel. The city denied, however, that it was making any use of the streets that was not customary or admissible, or that it was appropriating any street as market ground. The middle fifty feet of Michigan Grand avenue, as it was originally laid out, had been regularly acquired by the city

for market purposes, and the thoroughfares to that extent vacated ; but the city insisted that whatever had been done by its legislation in respect to the occupation of the remaining portions of Michigan Grand avenue by market wagons and dealers was done in the proper regulation of the use of the streets for customary city purposes, and did not go beyond such regulations.

On this state of facts it becomes important to understand what the precise ground is of the complaint which has been sustained in the Superior Court. If the complainant has sustained any legal grievance, we should know what is its precise nature, and in what particular the city has exceeded its just and legitimate authority.

It is not claimed that it was wrongful in the city to appropriate the middle part of Michigan Grand avenue to market purposes, even though inconvenience to adjacent property owners was a necessary consequence. The appropriation was regularly made, under an exercise of the eminent domain, and if any person was found entitled to compensation we must suppose it was made. Market places in large towns are a convenience, if not an absolute necessity, and their establishment is an act of legislation. An act of legislation can never be counted on as a legal wrong, however injurious it may prove to be to private interests. *Detroit v. Beckman* 34 Mich. 125 ; *McCutcheon v. Homer* 43 Mich. 483.

But it is complained that the city not only took the middle part of the street for a market place, but in effect it took the whole street, because its legislation caused the whole to be occupied and obstructed by market wagons. So far as the gathering of the market wagons in the vicinity was a result of the establishment of a market on the ground appropriated for the purpose, it is plain that it can constitute no legal ground of complaint, for this was but one of the incidental consequences of rightful municipal legislation. Nor, though it might be desirable that all sales in the open market should be made within the limits of the market grounds, will it be claimed that sales in the streets are in themselves wrongful. City streets are not laid out for the

passage of persons and vehicles exclusively, but for all the other purposes to which it is customary to devote them.   No one supposes there is any abuse of the right to use them when the gardener stops with his load of vegetables to bargain with one who proposes to purchase, or when two persons pause as they meet and negotiate the sale of some domestic animal.   It is necessary to permit such traffic in the streets to some extent, and the use only becomes wrongful when, by reason of exceptional circumstances, it constitutes an abuse.

It is said it has become an abuse in Detroit, because the city legislation not only suffers the traffic in the street, but it encourages it and congregates the dealers in one locality. It is bringing them together in one locality which causes the inconvenience with which complainant finds fault, and this inconvenience is so serious as to constitute, in his view, a private, if not a public nuisance.   It becomes important, then, to know whether any substantial purpose is accomplished by this bringing the market wagons together in one locality and whether the city can justify its action on public grounds.

If it be conceded that the common market articles of the city may lawfully be sold or exchanged in the streets, it is not difficult to assign some reasons of convenience in favor of the traffic being localized as far as possible.   One strong reason is that buyers will more readily find what they want. Another, equally strong, is that sellers will be enabled more readily to dispose of their wares and will economize time. But a reason more important on public grounds is that the city will thereby be the better enabled to enforce its inspection laws and sanitary regulations.

The inspection of meats, vegetables and other articles of provisions in order to prevent the sale and consumption of those that are unwholesome, and also to preclude frauds and cheats in weights, measures and by means of adulterations, is one of the most important of municipal duties.   But to render inspection inexpensive and thorough, the proper officer must know where he may find the articles he is to examine, and if he must search the city through for the pur-

pose, he would be certain, in the case of the most common articles, to perform the duty but imperfectly. If inspection is to be complete and thorough, the articles to be inspected must be brought together in specified localities at regular periods, or there must be other regulations that shall bring them to official notice. The legislation complained of has this in view as a leading object; and there is therefore in the purpose of the legislation nothing but what is lawful and admissible.

Still, the purpose may be right and the means selected or the measures taken to accomplish it, wrongful; and if what is done by the city in this case amounts to a substantial appropriation of Michigan Grand avenue, and a conversion of it from a thoroughfare to a city market, we must concede that such a case exists here. We must then see what the evidences are of such an appropriation. It is urged that they may be found in the fees that are charged to those who bring their commodities to the market and are stationed on the avenue, these fees being apparently looked upon in the nature of rent or of fees for license to occupy a part of the street. If this were their true nature, the argument of complainant would have much force. But the true light in which to regard these fees is that they are fees paid to cover the necessary expense of municipal regulations, and it is not likely that in the aggregate they exceed that expense. Nor does the fact that complainant is sometimes incommoded by market wagons in reaching his place of business make out a case against the city. Such an inconvenience might arise from numerous causes without giving just occasion for a complaint. It might arise from permitting a procession in the street, or from a municipal celebration, or a political gathering; and no one would deem himself entitled to complain that he was injured, unless the city was remiss in enforcing proper police regulations.

The proper police regulations the city claims in this case to have established and enforced. Market wagons are stationed and required to keep their places for the very purpose, among others, of preventing obstruction of general

passage and traffic. A police force is kept in the vicinity to preserve order and aid in keeping the way clear. The space selected for occupation by market wagons is a broad avenue where inconvenience is as little likely to result as, perhaps, anywhere in the city. If there is any wrong on the part of the city in the premises, it must arise from failure to establish or enforce due regulations to protect and preserve the right of passage. But this would be a failure in duty of a political nature and could give no right of action. *Wheeler v. Cincinnati* 19 Ohio St. 19; *Patch v. Covington* 17 B. Mon. 722; *Davis v. Montgomery* 51 Ala. 139; *Fisher v. Boston* 104 Mass. 87; *Hill v. Boston* 122 Mass. 344; *Grant v. Erie* 69 Penn. St. 420; *Hutchinson v. Concord* 41 Vt. 271; *Altvater v. Baltimore* 31 Md. 462; *Heller v. Sedalia* 53 Mo. 159; *Rivers v. Augusta* 65 Ga. 376; *Howard v. San Francisco* 51 Cal. 51; *Hill v. Charlotte* 72 N. C. 55; *Hewison v. New Haven* 37 Conn. 475.

If it be a fact, as complainant alleges, that the value of his property is diminished by the market regulations of the city, the result may be deplored, but the injury cannot be compensated in a recovery of damages. The vicinity of a market place is generally thought desirable, and it certainly is so for many kinds of business, because the congregation of people makes the business known and renders transactions convenient. It is therefore likely to enhance the value of property. For some purposes, however, it might not make a desirable neighborhood. A dealer in expensive dress goods would not be likely to locate his business by a fish or vegetable market, and for his purposes the location of such a market near him might diminish the value of his property. But here again we encounter results which are incident to or inseparable from the gathering of people into towns for residence and traffic. Every person is supposed to calculate upon the probability of his interests being affected by such matters when he buys his property or locates his business, and he gains or loses according as his judgment is verified or is disproved by events.

The result of our reflections is that the complainant has

262 OCTOBER TERM, 1882.

suffered no wrong at the hands of the city. What the city has done it has the discretion to do, and we find no abuse of discretion made out. The whole matter is one of market regulation. *Commonwealth v. Brooks* 99 Mass. 434; *Commonwealth v. Matthews* 122 Mass. 60; *Bowling Green v. Carson* 10 Bush 64; *New Orleans v. Stafford* 27 La. Ann. 417; and we could not, if we would, supervise the municipal action. *Gale v. Kalamazoo* 23 Mich. 344.

The decree must be reversed and the bill dismissed with costs of both courts.

The other Justices concurred.