ROSARIO v CITY OF LANSING

Docket No. 58025. Argued June 8, 1977 (Calendar No. 14).—Decided
    July 24, 1978.

Terrance Rosario, administrator of the estate of DeAndrea Ro-
    sario, deceased, brought an action for wrongful death caused by
    the negligent maintenance of a drain, in which DeAndrea
    Rosario, who was 19 months old, drowned, against the City of
    Lansing and Bethlehem Evangelical Lutheran Church of Lans-
    ing. The plaintiff later amended the complaint to allege that
    the open drain was an "attractive nuisance". Ingham Circuit
    Court, Jack W. Warren, J., granted summary judgment for
    defendant City of Lansing grounded on governmental immu-
    nity. The Court of Appeals, Quinn, P.J., and R. B. Burns, J.
    (D. E. Holbrook, Jr., J., concurring), affirmed (Docket No.
    23671). Plaintiff appeals. *Held:*

The summary judgment for the City of Lansing is reversed.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 7, 8, 13] 57 Am Jur 2d, Municipal Schools, and State Tort
    Liability §§ 293, 298.
    58 Am Jur 2d, Nuisances § 55.
    Rule of municipal immunity from liability for acts in performance
        of governmental functions as applicable to personal injury or
        death as result of a nuisance. 56 ALR2d 1415.
[3] 20 Am Jur 2d, Courts §§ 184, 196.
[4, 5, 17] 39 Am Jur 2d, Highways, Streets, and Bridges §§ 480, 496,
    500, 501.
    Liability of owner or occupant for condition of covering over open-
        ing or vault in sidewalk. 31 ALR2d 1334.
[6] 58 Am Jur 2d, Nuisances § 147.
[9] 62 Am Jur 2d, Premises Liability §§ 148, 155.
[10] 58 Am Jur 2d, Nuisances § 1.
[11] 62 Am Jur 2d, Premises Liability §§ 161–164.
    Age and mentality of child as affecting application of attractive
        nuisance doctrine. 16 ALR3d 25.
[12, 14, 15] 57 Am Jur 2d, Municipal, School, and State Tort Liability
    § 301.
[16] 57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 293–
    305.
    58 Am Jur 2d, Nuisances § 12.
[18] 57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 80–
    82.

Justice Fitzgerald, joined by the Chief Justice and Justice Levin, wrote:

1. Liability for nuisance is predicated on the existence of a dangerous condition. An improperly designed or maintained manhole cover may constitute a nuisance. The first amended complaint sufficiently alleges a nuisance in fact in failure to secure the covering of the drain, unless governmental immunity bars the claim.

2. The nuisance exception to governmental immunity from tort liability arises solely from case law. The governmental tort liability statute is silent on the nature of the nuisance exception; therefore the evolution of the case-law precedent is exclusively committed to the judicial branch of government.

3. Case-law governmental immunity does not bar the claim. Injunctions regulating the activity of governmental entities have nearly always been available without regard to whether the nuisance was a nuisance per se or a nuisance in fact. The case precedent for the nuisance exception to governmental immunity exists independent of the "governmental function" defense. Whether or not the open drain was a nuisance was a question for the jury.

4. The plaintiff's decedent, who was 19 months old, was a trespasser in the parking lot of the defendant church. The age of the child is one of the circumstances to be considered in determining whether or not the open drain was a nuisance under the doctrine of attractive nuisance which takes into account the peculiar nature of children. Defendant's contention that the doctrine of attractive nuisance has never been adopted in Michigan is incorrect.

Justice Moody, joined by Justice Williams, concurred in reversing the summary judgment. When a nuisance in fact is alleged, whether the particular thing or act creates a nuisance in fact is to be determined by the trier of fact. If the trier of fact finds that a nuisance was created and that the nuisance was intentionally, rather than negligently, created, governmental immunity is not a bar to the action. In the instant case the complaint alleged that the nuisance was negligently created and that the city "refused" to eliminate the condition, which alleges a deliberate act by the government to create the condition complained of. The summary judgment should be reversed and the plaintiff given an opportunity to present facts establishing a prima facie case of intentional nuisance.

Justice Ryan, joined by Justice Coleman, dissented. The governmental tort liability act was intended to codify the

state's existing immunity to insulate governmental entities from tort liability. Since the common-law or existing immunity doctrine included certain judicially created exceptions which defined its limits, the legislatively codified immunity is limited and defined by the same exceptions. One of the exceptions is here in issue: the doctrine of "nuisance", which is limited to "nuisance per se" and "intruding nuisances". The plaintiff alleges that the open drain constituted an unreasonably dangerous condition and that the city failed to replace the top on the drain, provide barricades around the drain, or provide any warning of the dangerous condition. The complaint does not allege a factual basis sufficient to establish either a "nuisance per se" or an "intruding nuisance". Rather, the claim is one for damages predicated upon the city's carelessness in failing to remedy a dangerous condition. Negligence claims brought under the guise of "nuisance" are not excepted from the defense of governmental immunity.

Reversed.

66 Mich App 597; 239 NW2d 428 (1976) reversed.

DECISION OF THE COURT

1. NUISANCE—GOVERNMENTAL IMMUNITY.

Summary judgment for defendant city on the ground of governmental immunity in an action for wrongful death by drowning in an open drain is reversed: because the plaintiff has alleged a nuisance in fact and governmental immunity is not a defense to a claim properly alleging nuisance, per FITZGERALD, J., KAVANAGH, C.J., and LEVIN, J.; because the plaintiff has alleged an intentional nuisance and governmental immunity is not a defense to a claim of intentional, as distinguished from negligent, nuisance, per BLAIR MOODY, JR., and WILLIAMS, JJ.

OPINION BY FITZGERALD, J.

KAVANAGH, C.J., and LEVIN, J.

2. NUISANCE—GOVERNMENTAL IMMUNITY—COMMON LAW.

*The nuisance exception to governmental immunity from tort liability arises solely from case law and not from the governmental tort liability statute (MCL 691.1407; MSA 3.996[107]).*

3. COMMON LAW—COURTS.

*The evolution of case-law precedent is exclusively committed to the judicial branch of government.*

4. NUISANCE—DANGEROUS CONDITION.

*Liability for nuisance is predicated on the existence of a danger-*

ous condition; an improperly designed or maintained manhole cover may constitute a nuisance.

5. NUISANCE—DRAINS—PLEADING—SUFFICIENCY.

A complaint for wrongful death which alleges that an open drain in a parking lot created an extremely dangerous and hazardous condition, and that a defendant negligently failed to secure the cover of the drain, which resulted in the decedent's drowning, sufficiently alleges a nuisance in fact to present a question for the jury.

6. NUISANCE—GOVERNMENTAL IMMUNITY.

Injunctions regulating the activity of governmental entities in maintaining a nuisance have nearly always been available without regard to whether the nuisance was a nuisance per se or a nuisance in fact.

7. NUISANCE—GOVERNMENTAL IMMUNITY.

Governmental immunity does not bar a claim against a governmental agency grounded upon nuisance in fact.

8. NUISANCE—GOVERNMENTAL IMMUNITY—GOVERNMENTAL FUNCTION.

Liability of a governmental agency for nuisance exists independent of the "governmental function" defense, and may be found without regard to whether the agency was engaged in a governmental or proprietary function.

9. NUISANCE—ATTRACTIVE NUISANCE—WORDS AND PHRASES.

The use of the words "attractive nuisance" points to the landowner's liability for harm caused by artificial conditions highly dangerous to trespassing children.

10. NUISANCE—DEFINITION.

The term "nuisance" now applies to cases in which members of the public are injured on a landowner's premises; it is no longer confined to obstructions of the right to travel on a public highway and invasions by a neighbor of one's interest in person or property as a landowner.

11. NUISANCE—ATTRACTIVE NUISANCE—DRAINS.

The doctrine of attractive nuisance takes into account the peculiar nature of children in trespassing upon land where they are at liberty to go; the age of a child is one of the circumstances to be considered in determining whether or not an open sewer drain was an attractive nuisance.

Concurring Opinion by Blair Moody, Jr., J.

Williams, J.

12. Nuisance—Governmental Immunity—Question of Fact.

*The trier of fact determines whether a governmental agency created a nuisance in fact and whether the nuisance was intentionally, rather than negligently, created.*

13. Nuisance—Governmental Immunity—Intentional Nuisance.

*Governmental immunity is not a bar to an action for an intentionally created nuisance.*

14. Nuisance—Governmental Immunity—Intentional Nuisance— Pleading—Summary Judgment.

*A complaint which' alleged that a governmental agency negligently created a nuisance and that the agency "refused" to eliminate the dangerous condition sufficiently described an intentional act by the government which, if established by proofs, could result in a finding by the trier of fact that the agency intentionally brought about the condition and, therefore, is not entitled to claim governmental immunity from the suit.*

Dissenting Opinion by Ryan, J.

Coleman, J.

15. States—Torts—Governmental Immunity—Statutes—Common Law Exceptions.

*The governmental tort liability act was intended to codify the state's existing immunity to insulate governmental entities from tort liability; since the common-law or existing immunity doctrine included certain judicially created exceptions which defined its limits, the legislatively codified immunity is limited and defined by the same exceptions (MCL 691.1407; MSA 3.996[107]).*

16. Nuisance—Governmental Immunity—Common Law—Words and Phrases.

*The common-law "nuisance exception" to governmental immunity from tort liability is limited to two subclasses of nuisances, "nuisances per se", which are nuisances without regard to the care with which they are conducted or the circumstances under which they' exist, and "intruding nuisances", which cause damage by the direct trespass of an instrumentality from government-owned land onto private property.*

17. Nuisance—Governmental Immunity—Common Law Exception.

*An allegation that a city negligently failed to replace the top on an open sewer drain, provide barricades around the drain, or provide any warning of the dangerous condition after its representatives knew or should have known of it is not a sufficient factual basis to establish either a "nuisance per se" or an "intruding nuisance" exception to governmental immunity from tort liability; rather, the claim is one for damages predicated upon the city's carelessness in failing to remedy a dangerous condition (MCL 691.1407; MSA 3.996[107]).*

18. Negligence—Nuisance—Governmental Immunity.

*Negligence claims brought under the guise of "nuisance" are not excepted from the defense of governmental immunity from tort liability.*

*Abood, Abood & Abood, P.C.* (by *William E. Rheaume*), for plaintiff.

*George H. Denfield* for the City of Lansing.

Fitzgerald, J. DeAndrea Rosario, age 19 months, was found drowned in an open sewer drain in the Bethlehem Evangelical Lutheran Church parking lot on May 11, 1973. Plaintiff filed a circuit court suit against both the church and the City of Lansing, alleging what he has denominated "negligence".[1] Plaintiff later amended his

---

[1] Plaintiff's "negligence" averments against the City of Lansing were:

V.

"That the City of Lansing, its agents, servants, or employees, knew or should have known that there was no top on said drain and that said open drain constituted an inherently dangerous condition, but that the City of Lansing neglected, failed and refused to place any top on said drain, failed to provide any barricades around said open drain, or to provide any warning or take any steps whatsoever to remove, repair, or eliminate this inherently dangerous condition;

VI.

"That the City of Lansing had been advised of this condition, had been requested to correct this inherently dangerous condition, and neglected and failed to do so, which was a proximate cause of the death of DeAndrea Rosario."

complaint, alleging a count he has referred to on appeal as "attractive nuisance".[2]

The trial court granted the City of Lansing's motion for summary judgment grounded on governmental immunity. The Court of Appeals affirmed, *Rosario v Lansing*, 66 Mich App 597; 239 NW2d 428 (1976). We granted leave to appeal, 399 Mich 835 (1977). Because the case comes to us on summary judgment, we accept plaintiff's factual allegations as true.

## I—Nuisance

We first note that because the alleged cause of action arose after August 1, 1970, the date upon which 1970 PA 155 cured the constitutional defect in 1964 PA 170 (MCLA 691.1407; MSA 3.996[107]), we must consider the application of the governmental immunity statute[3] to this case. *Thomas v Department of State Highways*, 398 Mich 1; 247 NW2d 530 (1976).

We noted in *Thomas* that the Legislature has

_____

[2] Plaintiff's allegation of "attractive nuisance" was as follows:

"That the defendant, City of Lansing, was notified by both church officials and congregation members that the covering on the drain in question was frequently removed by children and other persons, and knew or should have known that children played in this area, and that said open drain was an attractive nuisance and created an extremely dangerous and hazardous condition for the children playing in this area, but that said defendant negligently failed and refused to take any steps whatsoever to secure the covering of said drain or to provide a heavier drain covering, or provide a covering that could not be removed without the appropriate tools, which was a proximate cause of the death of DeAndrea Rosario."

[3] MCLA 691.1407; MSA 3.996(107) provides:

"Except as in this act otherwise provided, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided herein, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed heretofore, which immunity is hereby affirmed."

enacted several exceptions to immunity. In addition to the legislatively created exceptions, there exists a significant judicially created exception to governmental immunity from tort liability—the nuisance exception.[4] The nuisance exception arises solely from the case law. The statute is silent on the question of the relationship between governmental immunity and nuisance. Thus, we turn to our case law to determine the nature of the nuisance exception to governmental immunity. "[T]he evolution of case-law precedent is exclusively committed to the judicial branch of government." *Thomas,* p 17, fn 4 (KAVANAGH—FITZGERALD dissenting opinion).

The instant case presents two questions: Did plaintiff plead a nuisance claim? If so, is governmental immunity a defense to that claim?

The questions are not easily answered. As Dean Prosser explained:

"There is perhaps no more impenetrable jungle in the entire law than that which surrounds the word 'nuisance.' It has meant all things to all men, and has been applied indiscriminately to everything from an alarming advertisement to a cockroach baked in a pie. There is general agreement that it is incapable of any exact or comprehensive definition." Prosser, Torts (4th ed), § 86, p 571.

Judge, now Justice, LEVIN, dissenting in *Maki v East Tawas,* 18 Mich App 109, 134; 170 NW2d 530 (1969), heeded Dean Prosser's warning, and declined to take an excursion into that jungle.[5] The

---

[4] Liability for nuisance is a species of tort liability. *Maki v East Tawas,* 385 Mich 151, 159, fn 4; 188 NW2d 593 (1971). *See, also,* Prosser, Torts (4th ed), § 87, p 573.

[5] Justice TALBOT SMITH once referred to nuisance as "the great grab bag, the dust bin, of the law." *Awad v McColgan,* 357 Mich 386, 389; 98 NW2d 571 (1959).

instant case requires that we embark on that excursion.

First, has plaintiff pled a nuisance claim? Under our case law liability for nuisance is predicated on the existence of a dangerous condition.[6]

"Primarily, nuisance is a condition. Liability is not predicated on tortious conduct through action or inaction on the part of those responsible for the condition. Nuisance may result from want of due care (like a hole in a highway), but may still exist as a dangerous, offensive, or hazardous condition even with the best of care." *Buckeye Union Fire Ins Co v Michigan,* 383 Mich 630, 636; 178 NW2d 476 (1970).

See, also, *Munson v Menominee County,* 371 Mich 504; 124 NW2d 246 (1963); *Bluemer v Saginaw Central Oil & Gas Service, Inc,* 356 Mich 399; 97 NW2d 90 (1959); and *Maki v East Tawas,* 385 Mich 151; 188 NW2d 593 (1971). An improperly designed or maintained manhole cover may constitute a nuisance. *Dahl v Glover,* 344 Mich 639; 75 NW2d 11 (1956).

In *Bluemer v Saginaw Central Oil & Gas Service, supra,* we explained one classification of nuisances, citing with approval 66 CJS, Nuisances, § 3, pp 733-734:

" 'From the point of view of their nature, nuisances are sometimes classified as nuisances *per se* or at law, and nuisances *per accidens* or in fact. A nuisance at law

---

[6] *Cf.* Prosser, Torts (4th ed), § 87, p 573:

"It [nuisance] has reference to the interests invaded * * * ."

"A private nuisance is a civil wrong, based on a disturbance of rights in land. The remedy for it lies in the hands of the individual whose rights have been disturbed. A public or common nuisance, on the other hand, is a species of catch-all criminal offense, consisting of an interference with the rights of the community at large, * * * ." Prosser, § 86, pp 572-573. *See Williams v Primary School District #3, Green Twp,* 3 Mich App 468; 142 NW2d 894 (1966).

or a nuisance *per se* is an act, occupation, or structure which is a nuisance at all times and under any circumstances, regardless of location or surroundings. Nuisances in fact or *per accidens* are those which become nuisances by reason of circumstances and surroundings, and an act may be found to be a nuisance as a matter of fact where the natural tendency of the act is to create danger and inflict injury on person or property. The number of nuisances *per se* is necessarily limited, and by far the greater number of nuisances are nuisances *per accidens.* For this reason whether or not a particular thing or act is a nuisance is generally a question of fact * * * .' " 356 Mich 411.

Plaintiff here alleged "an extremely dangerous and hazardous condition * * * but that said defendant negligently failed and refused to take any steps whatsoever to secure the covering of said drain * * * ". The first amended complaint sufficiently alleges a nuisance in fact. Accordingly plaintiff should have been allowed to present proofs to the jury on the question of nuisance unless governmental immunity bars the claim.

Second, does governmental immunity bar recovery of damages for personal injury or death caused by a nuisance in fact? The last time this question was squarely presented to the Court, because the governmental immunity statute was ruled unconstitutional, we found it "unnecessary to decide what effect the nature of this nuisance recovery *(i.e.,* 'manner of operation') has on municipal immunity". *Maki, supra,* 385 Mich 159.

The fact that there exists some form of nuisance exception to governmental immunity emerges clearly from case precedent.[7] The limits of that exception present the more difficult question.

---

[7] The exception was stated very early in our history. "[T]he city, by creating the nuisance, which the evidence offered tended to prove, is *prima facie* liable for its continuance." *Pennoyer v Saginaw,* 8 Mich 534 (1860). The exception remains viable in today's jurisprudence. "No state agency is free to maintain a nuisance and hence it cannot

We find it unnecessary to dwell at any great length on the early cases in which Michigan governmental immunity originated. As the doctrine crystallized, several different justifications for either governmental liability or non-liability can be discerned. The result is that a case can be found supporting almost any proposition concerning governmental immunity one chooses to advance.[8]

We turn then to more recent history. In the instant case the Court of Appeals affirmed the trial judge's grant of summary judgment in favor of the City of Lansing by relying on *Royston v Charlotte,* 278 Mich 255, 260; 270 NW 288 (1936).

"Acts in the discharge of governmental functions which create a nuisance *per se* do not come within the immunity otherwise accorded. Want of care in maintenance, however, presents the question of negligence only, and not that of a public nuisance, which must rest on inherent danger even under the best of care."

permit or require another person to do so." *Ebel v Saginaw County Board of Road Commissioners,* 386 Mich 598, 607; 194 NW2d 365 (1972).

*See,* generally, Anno: *Rule of municipal immunity from liability for acts in performance of functions as applicable to personal injury or death as result of a nuisance,* 56 ALR2d 1415.

[8] For example, in the general field of nuisance liability, in the early cases we find that a municipality would be liable for damages caused by water escaping from a sewer onto nearby realty, *Pennoyer v Saginaw, supra,* fn 7; *Ashley v Port Huron,* 35 Mich 296 (1877), and *Defer v Detroit,* 67 Mich 346; 34 NW 680 (1887). We also find that a city will not be liable for damages caused by water escaping from a sewer onto nearby realty, *Dermont v Mayor of Detroit,* 4 Mich 435 (1857).

Similarly, we find early support both for the principle that a city may be held liable for personal injuries sustained in the public way by virtue of what can only be characterized as negligence, *Detroit v Corey,* 9 Mich 165 (1861), and *Dewey v Detroit,* 15 Mich 307 (1867), and that a city would not be liable for such injuries, *Detroit v Blackeby,* 21 Mich 84 (1870). The question of recovery for damages to person or property sustained in the public highway was ultimately resolved by statute, 1879 PA 244.

Cooperrider, *The Court, the Legislature, and Governmental Tort Liability in Michigan,* 72 Mich L Rev 187-211 (1973), extensively discusses the early cases.

No authority was cited for that proposition.[9]

The implication that only nuisances *per se* were outside governmental immunity was not well-grounded in prior case law. Injunctions regulating the activity of governmental entities have nearly always been available without regard to whether the nuisance was a nuisance per se or a nuisance in fact.[10]

*Royston* was severely questioned in *Buckeye Union Fire Ins Co v Michigan,* 383 Mich 630; 178 NW2d 476 (1970), where we said:

"It must be concluded that *Royston* is not applicable to a case involving a nuisance, this Court having clearly

[9] The authority appears to be dicta in *Burford v Grand Rapids,* 53 Mich 98, 103-104; 18 NW 571 (1884), where Justice Cooley, writing for a unanimous Court, found the City of Grand Rapids not liable for injury to plaintiff's horse which was hit by a "bob" on a city street on which the city permitted sledding. Justice Cooley wrote that the decision to permit sledding was an exercise of legislative discretion. And cities are not liable for an erroneous legislative determination. Similarly, *see Henkel v Detroit,* 49 Mich 249; 13 NW 611 (1882).

But, said Justice Cooley, had plaintiff alleged that his right to travel had been obstructed, since travelers have the first right to the public streets, he might have recovered. Or,

"Counsel for the plaintiff contends * * * that the common council, by the permission it gave for the use of Fountain street for coasting, licensed a nuisance in a public highway, and that the city is responsible precisely as it would be if the nuisance had been caused under its command and by its agents. [Citations omitted.] If it were unquestionable that coasting upon a public highway was always a nuisance, there would be much plausibility in this contention, and perhaps it should be accepted as sound. * * * On the contrary, as the sport itself is healthful and exhilarating, it seems eminently proper, if the street is not put to other public use, that this diversion be allowed, if not expressly sanctioned. The sport itself is not entirely foreign to the purposes for which public ways are established; for the use of these ways for pleasure riding is perfectly legitimate * * * ."

[10] *See Birchard v Lansing Board of Health,* 204 Mich 284; 169 NW 901 (1918) (pesthouse); *Gundy v Village of Merrill,* 250 Mich 416; 230 NW 163 (1930) (deposit of sewage in open drain); *Northwest Home Owners Assn v Detroit,* 298 Mich 622; 299 NW 740 (1941) (garbage incinerator); and *Smith v Ann Arbor,* 303 Mich 476; 6 NW2d 752 (1942) (city dump).

*Cf. Henkel v Detroit,* 49 Mich 249; 13 NW 611 (1882).

held that the situation in *Royston* involved negligence only." 383 Mich 634,

and,

"Negligence, which is antecedent to and responsible for the nuisance, is not our concern here even though the nuisance in this case may have been created by negligent acts." 383 Mich 635,

citing several cases since *Royston,* in which recovery was had for nuisance created by negligence, and, finally,

"Damage to plaintiffs flowed from the nuisance and the mere fact that negligence may have existed in a variety of acts or by inaction by the state during the continuing period of the nuisance will not permit it to escape its liability." 383 Mich 638.

We held that governmental immunity was not a defense to nearby landowners' claims for property damage.

The nuisance in *Buckeye,* a building which was a fire hazard, was a nuisance in fact. The nuisance was created by negligent acts. Had nuisance been the sole basis for the decision that governmental immunity was not applicable in that case, we would without hesitancy state that *Buckeye* recognizes a nuisance in fact exception to governmental immunity.[11]

The decision in *Buckeye* also rests on the state's

[11] *Cf. Buddy v Dept of Natural Resources,* 59 Mich App 598; 229 NW2d 865 (1975), *Gerzeski v Dept of State Highways,* 68 Mich App 91; 241 NW2d 771 (1976), and *Stremler v Dept of State Highways,* 58 Mich App 620; 228 NW2d 492 (1975).

In *Gerzeski* the concern was expressed that a broad reading of *Buckeye* would virtually destroy governmental immunity. We disagree. We fail to see how a claim for medical malpractice or a policeman's careless use of a firearm, for example, could ever be pled as nuisance.

taking of private property without just compensation.[12] *Buckeye* dealt with the state's immunity. We said that the Legislature "has dealt with waiver of the state's immunity from tort liability by 'a pattern of deliberate legislative choices'" (383 Mich 640), citing *McDowell v State Highway Commissioner,* 365 Mich 268; 112 NW2d 491 (1961). We reexamined *McDowell in Pittman v City of Taylor,* 398 Mich 41; 247 NW2d 512 (1976), and concluded that *McDowell* was erroneous in concluding that the Legislature granted statutory tort immunity to the state in 1945. *Pittman, supra,* 46-47, fn 1. We now recognize that governmental immunity is not solely a creature of the Legislature. *Pittman, supra.* Hence we find it unnecessary to resort to a constitutional provision to hold that the defense of governmental immunity may not be asserted against a claim properly alleging nuisance.[13]

That we did intend that *Buckeye* recognize a nuisance-in-fact exception to governmental immunity was soon assured. We said in *Ebel v Saginaw County Board of Road Commissioners,* 386 Mich 598, 607; 194 NW2d 365 (1972): "No state agency is free to maintain a nuisance, and hence it cannot permit or require another person to do so."[14]

---

[12] The rationale has been severely criticized as a "fiction of the most obvious and most unwise variety." Cooperrider, fn 8 *supra,* p 248. *See, also,* Cooperrider, *Torts, 1971 Annual Survey of Michigan Law,* 18 Wayne L Rev 503, 520 (1972). *But see* 58 Am Jur 2d, Nuisance, § 230, p 835.

[13] "If the defendant [in *Buckeye]* were a subordinate governmental unit not covered by the state's 'sovereign immunity', the liability would apparently have been deemed supported by the 'nuisance' characterization alone." Cooperrider, *The Court, the Legislature, and Governmental Tort Liability in Michigan,* p 248.

[14] Although the statement was made in reference to the question of whether or not a railroad could be charged with maintenance of a nuisance by virtue of its compliance with an order of the Public Service Commission, the statement assumes that the state is liable for maintenance of a nuisance. The railroad crossing signal in *Ebel* was allegedly a nuisance in fact, causing personal injury to plaintiff.

One final question must be addressed. The first sentence of MCLA 691.1407; MSA 3.996(107) reads: "Except as in this act otherwise provided, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function."

Liability for nuisance was found in the case precedent without regard to the "governmental function" question.[15] The nuisance exception "antedates the governmental-function defense by decades". Cooperrider, *The Courts, the Legislature and Governmental Tort Liability in Michigan,* 72 Mich L Rev 187, 279 (1973). In *Buckeye, supra,* defendant asserted as an affirmative defense the fact that it was not engaged in a proprietary function. The issue was not discussed by the Court. We agree with Professor Cooperrider's conclusion that the nuisance exception exists independent of the "governmental function" defense. *Ibid,* pp 280-281.

In conclusion, plaintiff has sufficiently pled a claim grounded upon nuisance in fact. Governmental immunity does not bar the claim. Whether or not the open drain was a nuisance was a question for the jury. Therefore, the granting of the sum-

---

[15] *See,* for example, *Birchard v Lansing Board of Health,* 204 Mich 284; 169 NW 901 (1918) (injunction against erection of pesthouse); *Northwest Home Owners Ass'n v Detroit,* 298 Mich 622; 299 NW 740 (1941) (injunction regulating garbage incinerator); and *Pound v Garden City School District,* 372 Mich 499; 127 NW2d 390 (1964) (school district liable for personal injuries sustained when plaintiff fell on ice created on sidewalk by improper drainage from school property.)

*See, also,* 18 McQuillin, Municipal Corporations (3d ed rev), § 53.49, citing cases from other jurisdictions to the effect that a municipality is liable for nuisance regardless of whether or not it was exercising a governmental function.

*Cf. Munson v Menominee County,* 371 Mich 504; 124 NW2d 246 (1963), finding a county's rental of an office facility to the state a proprietary function, hence the county was subject to nuisance liability for disrepair.

mary judgment for the City of Lansing was improper.

## II—ATTRACTIVE NUISANCE

Plaintiff's complaint alleged that the open drain in which DeAndrea Rosario drowned was an "attractive nuisance". The use of those words points to what is now called the landowner's liability for harm caused by artificial conditions highly dangerous to trespassing children, 2 Restatement Torts, 2d, § 339. "Attractive nuisance" law is essentially negligence law. 2 Restatement Torts, 2d, § 339, comment o; Prosser, Torts (4th ed), § 59, p 366. In those jurisdictions confining nuisance to the strict Prosser definition of public and private nuisance the use of the word "nuisance" to describe an "artificial condition highly dangerous to trespassing children" might well be a misnomer. Given our broader definition of the term "nuisance", the phrase "attractive nuisance" is more accurate. Plaintiff's counsel stated in oral argument that it was not the negligence concept of "attractive nuisance" that he relied upon as an exception to governmental immunity, but that he relied upon "nuisance" as an inherently dangerous condition.

At one time we did confine the term "nuisance" to public nuisance (referring to the obstruction of the right to travel on the public highway) and private nuisance (referring to the invasion by a neighbor of one's interest in person or property as a landowner). *Kilts v Kent County Supervisors,* 162 Mich 646; 127 NW 821 (1910).

"But a private person may use his own premises as he will, so long as he does no injury to the public, or to the property and rights of a private person, and one may erect a weak structure upon his premises, so far

from the street and other's property, that persons not entering upon his premises can be in no danger from it." 162 Mich 646, 650.

Later cases, however, have expanded "nuisance" so that the term now applies to members of the public injured on the landowner's premises. In *Munson v Menominee County,* 371 Mich 504; 124 NW2d 246 (1963), the plaintiff was a state employee who was injured when a window shade fell on her while she was working in a county-owned building leased to the state. In *Bluemer v Saginaw Central Oil & Gas Service, Inc, supra,* the plaintiff was a member of the public injured when he fell through an open trap door in a service station where he had gone to purchase gasoline. In *Maki v East Tawas, supra,* 385 Mich 151, we affirmed plaintiff's recovery in nuisance when he was struck in the eye by an exploding bullet at defendant's city dump where he had gone to discard refuse.

Mildred Munson, Marvin Bluemer and Leo Maki all were in places where they were allowed to be when injured. What then of DeAndrea Rosario? She was a trespasser. This is where the doctrine of "attractive nuisance" comes into play. The doctrine takes into account the peculiar nature of children.

"The moving about of the children upon the land where they were at liberty to go, while they were not actually employed, was as much an incident to their being there as is the loitering or playing by children outside the traveled part of the highway as they go upon it to school or upon errands. Children, wherever they go, must be expected to act upon childish instincts and impulses; and others who are chargeable with a duty of care and caution towards them must calculate upon this, and take precautions accordingly. If they

leave exposed to the observation of children anything which would be tempting to them, and which they in their immature judgment might naturally suppose they were at liberty to handle or play with, they should expect that liberty to be taken." *Powers v Harlow,* 53 Mich 507, 515; 19 NW 257 (1884).

The fact that DeAndrea Rosario was a child of 19 months is one of the circumstances to be considered by the jury in determining whether or not the open drain was a nuisance.

Defendant contends the doctrine of attractive nuisance has never been adopted in Michigan. Defendant is incorrect. See *Lyshak v Detroit,* 351 Mich 230; 88 NW2d 596 (1957); *Petrak v Cooke Contracting Co,* 329 Mich 564; 46 NW2d 574 (1951); and *Elbert v Saginaw,* 363 Mich 463; 109 NW2d 879 (1961).

The Court of Appeals relied on *Royston v Charlotte, supra,* in holding attractive nuisance inapplicable to the case at bar. While it is true that the defective swing in a city park upon which the plaintiff's decedent was injured in *Royston* was not an attractive nuisance, the instant case can be easily distinguished. The swing in *Royston* was specifically designed to be attractive to children. The swing was placed in the park for the entertainment of children. It is glaringly apparent that such was not the purpose of the sewer in which the life of DeAndrea Rosario came to its tragic end.

Reversed. No costs, a public question being involved.

KAVANAGH, C. J., and LEVIN, J., concurred with FITZGERALD, J.

BLAIR MOODY, JR., J. *(concurring).* I concur with

the result reached by my colleague Justice FITZ-
GERALD.

In *Gerzeski v Department of State Highways*
(decided today 403 Mich 149; 268 NW2d 525 [1978]),
this Court was asked to delineate the perimeters of
the judicially created "nuisance" exception to gov-
ernmental immunity.

In that case, my opinion stated that when a
nuisance in fact is alleged, whether or not the
particular thing or act creates a nuisance is a
question of fact to be determined by the trier of
fact. If the trier of fact finds the existence of a
nuisance in fact, the trier of fact must then deter-
mine whether the nuisance in fact was created
negligently or intentionally. When the trier of fact
determines that the alleged nuisance was inten-
tional, governmental immunity is not a bar.

In order to find an intentional nuisance, the
trier of fact must decide based upon the evidence
presented that the governmental agency intended
to bring about the conditions which are in fact
found to be a nuisance. This finding comports with
the definition of intentional nuisance set forth in
*Denny v Garavaglia,* 333 Mich 317, 331; 52 NW2d
521 (1952):

"A second [type of nuisance] includes nuisances which
are intentional, using that word as meaning not that a
wrong or the existence of a nuisance was intended but
that the creator of them intended to bring about the
conditions which are in fact found to be a nuisance."

Therefore, in the present case, if the plaintiff
pled an intentional nuisance claim, the trial
court's summary judgment for the City of Lansing
on governmental immunity grounds must be re-
versed.

Plaintiff's complaint against the governmental agency alleged the following:

"That the City of Lansing, its agents, servants, or employees, knew or should have known that there was no top on said drain and that said open drain constituted an inherently dangerous condition, but that *the City of Lansing* neglected, failed and *refused to place any top on said drain,* failed to provide any barricades around said open drain, or to provide any warning or take any steps whatsoever to remove, repair, or eliminate this inherently dangerous condition." (Emphasis added.)

The terms "neglected" and "failed" allege negligent activity. However, liberally construed,[1] the underscored language pleads more than negligence on the part of the City of Lansing. The word "refused" denotes more than a "want of care in maintenance" or neglect. In this context, "refused" describes an alleged deliberate act by the governmental agency to create the complained-of condition.[2]

---

[1] *Lahar v Barnes,* 353 Mich 408; 91 NW2d 261 (1958). *See Rose v Wertheimer,* 11 Mich App 401, 405; 161 NW2d 406 (1968), where the Court of Appeals stated:

"[T]he rules and practice of pleading have been liberalized greatly pursuant to the equitable consideration that a person should be allowed his day in court if it appears reasonably certain that his pleadings set forth a justiciable question and that, taken in their entirety, they are reasonably adapted to inform the adverse party of the cause which he is called upon to contest."

[2] In discussing conduct that may result in nuisance liability, William Prosser made the following differentiations between intentional nuisances and negligent nuisances:

"Occasionally [intentional nuisances] proceed from a malicious desire to do harm for its own sake; but more often they are intentional merely in the sense that the defendant has created or continued the condition causing the nuisance *with full knowledge* that the harm to the plaintiff's interests is substantially certain to follow.

\* \* \*

"[A] nuisance may also result from conduct which is merely negligent, where there is no intent to interfere in any way with the

Accordingly, plaintiff's pleadings allege conduct which, if established by proofs, could conceivably result in a trier of fact determination that the City of Lansing intentionally brought about the conditions which are in fact found to be a nuisance. Therefore, the summary judgment should be reversed and the plaintiff given the opportunity to present proofs establishing a prima facie case of intentional nuisance.

WILLIAMS, J., concurred with BLAIR MOODY, JR., J.

RYAN, J. *(dissenting).* On May 11, 1973, plaintiff decedent, DeAndrea Rosario, was found drowned in an open sewer drain in the Bethlehem Evangelical Lutheran Church parking lot in the City of Lansing.[1] The drain was part of a sewer system owned and maintained by the City of Lansing. Plaintiffs brought suit against both the church and the City of Lansing, alleging negligence.[2] Later

plaintiff, but merely a failure to take precautions against a risk apparent to a reasonable man. * * * In particular, negligence is the usual basis of liability where the defendant is doing something authorized by the legislature, or, *without knowledge* that anything is wrong, he has merely failed to inspect and repair his premises, or he has only failed to discover or to repair or abate a condition which he has not created, but which is under his control." (Emphasis added.) Prosser, Torts (4th ed), § 87, pp 574-575.

[1] In their amended complaint, plaintiffs alleged that "the covering on the drain in question was frequently removed by children and other persons * * * ".

[2] Plaintiffs' "negligence" averments against the City of Lansing were:

V.

"That the City of Lansing, its agents, servants, or employees, knew or should have known that there was no top on said drain and that said open drain constituted an inherently dangerous condition, but that the City of Lansing neglected, failed and refused to place any top on said drain, failed to provide any barricades around said open drain, or to provide any warning or take any steps whatsoever to remove, repair, or eliminate this inherently dangerous condition;

VI.

"That the City of Lansing had been advised of this condition, had

plaintiffs amended the complaint to include an additional count in negligence based on "attractive nuisance".[3]

The City of Lansing moved for summary judgment, asserting that any recovery based upon claim of negligence or nuisance predicated upon negligence is precluded by § 7, 1964 PA 170 as amended, MCLA 691.1407; MSA 3.996(107).[4] The trial court granted the City of Lansing's motion and dismissed the plaintiffs' cause of action as failing to state a claim on which relief can be granted. GCR 1963, 117.2(1). The Court of Appeals affirmed. 66 Mich App 597; 239 NW2d 428 (1976).

As was observed in *Thomas v Department of State Highways,* 398 Mich 1, 10; 247 NW2d 530 (1976):

"The historical context in which the governmental immunity statute was enacted suggests that the Legislature, alarmed at the prospects of liability for govern-

---

been requested to correct this inherently dangerous condition, and neglected and failed to do so, which was a proximate cause of the death of DeAndrea Rosario."

[3] Plaintiffs' allegation of "attractive nuisance" was as follows:

"That the defendant, City of Lansing, was notified by both church officials and congregation members that the covering on the drain in question was frequently removed by children and other persons, and knew or should have known that children played in this area, and that said open drain was an attractive nuisance and created an extremely dangerous and hazardous condition for the children playing in this area, but that said defendant negligently failed and refused to take any steps whatsoever to secure the covering of said drain or to provide a heavier drain covering, or provide a covering that could not be removed without the appropriate tools, which was a proximate cause of the death of DeAndrea Rosario."

[4] "Except as in this act otherwise provided, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided herein, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed heretofore, which immunity is hereby affirmed."

mental activities previously protected, sought to restore the immunity enjoyed by municipalities prior to *Williams v Detroit,* 364 Mich 231; 111 NW2d 1 (1961), *and to codify the state's existing immunity to insulate governmental entities from tort liability."* (Emphasis added.)

Consequently, in order to determine the scope of the now codified immunity, we must determine the scope of its antecedent "existing immunity". Since the common-law or "existing immunity" doctrine included certain judicially created exceptions which defined its limits, the legislatively codified immunity is limited and defined by the same exceptions. One of these exceptions is here in issue: the doctrine of "nuisance".

In *Gerzeski v Department of State Highways,* 403 Mich 149; 268 NW2d 525 (1978), we were asked to define the perimeters of the judicially created "nuisance" exception as it related to judicially created sovereign immunity. After reviewing prior case law, I concluded that the "nuisance exception", as it is commonly known, is limited to two subclasses of nuisance, "nuisances per se" and "intruding nuisances" and observed:

"The first exception entails those situations where the state creates or maintains a 'nuisance per se'. *Royston v Charlotte,* 278 Mich 255, 260; 270 NW 288 (1936). See, for example of 'nuisance per se', *Trowbridge v Lansing,* 237 Mich 402; 212 NW 73 (1927), decaying garbage in 'piggery'; *Attorney General ex rel Wyoming Twp v Grand Rapids,* 175 Mich 503; 141 NW 890 (1913), disposing of raw sewage in river.

"Such activities or conditions are properly characterized as a 'nuisance per se' because they are nuisances without regard to the care with which they are conducted or the circumstances under which they exist. *Bluemer v Saginaw Central Oil & Gas Service, Inc,* 356 Mich 399, 411; 97 NW2d 90 (1959); *People v Detroit*

*White Lead Works,* 82 Mich 471, 476; 46 NW 735
(1890)." *Gerzeski* at 149.

"The second judicial exception to governmental im-
munity consists of those situations wherein damage is
caused by the direct trespass of an instrumentality
from government-owned land onto private property.
*Buckeye Union Ins Co v Michigan,* 383 Mich 630; 178
NW2d 476 (1960), fire spreading from state maintained
hazard; *Herro v Chippewa County Road Commissioners,*
368 Mich 263; 118 NW2d 271 (1962), flooding waters
escaping from artificial reservoir; *Ferris v Board of
Education of Detroit,* 122 Mich 315; 81 NW 98 (1899),
slippery condition created by ice and snow falling from
roof of government-owned building onto neighboring
land." *Gerzeski* at 149.


For the reasons stated *infra,* those same conclu-
sions are equally applicable to this legislatively
created immunity case.

In this case, plaintiffs' complaint against the
City of Lansing alleged that the open sewer drain
constituted an unreasonably dangerous condition.
The liability of the city in connection therewith
was essentially predicated upon the city's negli-
gent conduct in failing to replace the top on the
drain, provide barricades around the drain, or
provide any warning of this dangerous condition
after its representatives knew or should have
known of the dangerous condition.

It is readily apparent that plaintiffs' complaint
does not allege a factual basis sufficient to estab-
lish either a "nuisance per se" or an "intruding
nuisance". Rather, the claim is one for damages
predicated upon the city's carelessness in failing to
remedy a dangerous condition. This Court has
previously refused to except from the defense of
governmental immunity, negligence claims
brought under the guise and label of "nuisance".
*McDowell v State Highway Commissioner,* 365

Mich 268; 112 NW2d 491 (1961); *Royston v Charlotte, supra; Daniels v Board of Education of Grand Rapids,* 191 Mich 339; 158 NW 23 (1916).

I reemphasize that the narrow judicial exceptions to governmental immunity extend only to "per se" and "intruding" nuisances.

Accordingly, I would affirm the finding of the Court of Appeals. No costs, a public question.

COLEMAN, J., concurred with RYAN, J.